[No. D039198. Fourth Dist., Div. One. Mar. 6, 2003.]

CORONADO POLICE OFFICERS ASSOCIATION et al., Petitioners, v. STEVEN J. CARROLL, as Public Defender, etc., Respondent.

**Counsel**

Everett L. Bobbitt for Petitioners.

John J. Sansone, County Counsel, and William L. Pettingill, Deputy County Counsel, for Respondents.

**Opinion**

**McINTYRE, J.**—Coronado Police Officers Association and seven other police officers associations (collectively the Association) appeal from a judgment denying them access to a database created by defendants Steven J. Carroll, as the San Diego County Public Defender, and San Diego County Department of the Public Defender (collectively the Public Defender) under the California Public Records Act, Government Code section 6250 et seq. (the Act). (All statutory references are to the Government Code unless otherwise indicated.) The Association contends the trial court erred when it ruled that the database was not a public record within the meaning of section 6252. We treat the appeal as a petition for an extraordinary writ, which we deny on the grounds that the database is not a public record; and even if it is, it would be exempt from disclosure under the Act's "catchall" exemption (§ 6255) because the public interest in nondisclosure clearly outweighs the public interest in disclosure.

### Factual and Procedural Background

The Public Defender is an agency organized under the County of San Diego Charter whose principal business is the representation of indigent criminal defendants. It functions like a typical law firm to further the interests of its clients through the combined resources, research and work product of the entire organization. Since 1988 the Public Defender has preserved client files in the original hard copy format, but technical innovations have since allowed it to scan the preserved files into an electronic

medium. With the exception of restricted information, all Public Defender attorneys are able to access the electronically stored files to assist them in representing clients. After scanning the client files it created indices of the files that allow its individual attorneys to access the electronically stored information for whatever purpose may legitimately assist them in defending their clients, including the ongoing representation of existing clients, utilization of existing witness statements in new cases, discovering patterns of alleged Fourth Amendment violations by the police officers involved in a particular case, researching the database for previous internal investigations relating to police misconduct, or making a copy of files for a client or appellate counsel.

To give its attorneys fast and efficient access to information regarding peace officer performance and other recurring issues, the Public Defender also devised and implemented a computer program to supplement and integrate such information into its existing files. Thus, the "database" at issue is comprised of information contained in the Public Defender's existing client files that is supplemented with information gathered from other public information sources, such as court files, civil service proceedings, peace officer reports and newspaper articles. Information in the database includes impeachment evidence. One of the Public Defender's goals is to share impeachment information so that each attorney does not have to undertake a new and independent investigation every time a case file is opened.

The Association discovered the existence of the database from a newspaper article. It sought to inspect the database under the Act after becoming concerned that the database might (1) include peace officer personnel records (*Pitchess* material; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]); (2) violate article I, section 1 of the California Constitution, which prohibits the unnecessary collection of personal information; and (3) contain inaccurate information. After the Public Defender denied its request, the Association filed this action seeking declaratory relief and a writ of mandamus to compel the disclosure. The trial court found the database at issue was not a "public record" and the Association appeals. During the pendency of this appeal, we asked the parties to submit supplemental letter briefing on the applicability of section 6255 to this action.

DISCUSSION

*Appealability of Judgment*

The Public Defender contends the judgment denying the Association access to the database is not appealable and the Association's sole means of

obtaining appellate review of that order was to file a petition for extraordinary writ with this court. We disagree.

Subdivision (c) of section 6259 provides that an order granting or denying a request for disclosure of public records is generally reviewable by writ rather than appeal. In limited situations, however, an appellate court may determine the merits of an attempted appeal from a nonappealable judgment or order by treating the matter as a writ proceeding. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401 [197 Cal.Rptr. 843, 673 P.2d 720].) This power is generally invoked where (1) the briefs and record contain in substance all the elements prescribed by rule 56 of the California Rules of Court for an original mandate proceeding and (2) there are extraordinary circumstances justifying the exercise of that discretionary power. (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 745-747 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *Olson v. Cory, supra,* 35 Cal.3d at p. 401.)

The instant record satisfies the first requirement. We find the second requirement is also satisfied because the Association filed the notice of appeal within the statutory time period for seeking writ review and a dismissal for lack of appellate jurisdiction would lead to further trial court proceedings and would not further judicial economy. Under these unusual circumstances, we reach the merits of the appeal by treating it as a petition for an extraordinary writ.

### *The Database Is Not a Public Record*

■ The Act requires that local and state agencies make their public records available for inspection. (§ 6253.) A "public record" is defined as "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency[.]" (§ 6252, subd. (e).) The definition is broad and " ' "intended to cover every conceivable kind of record that is involved in the governmental process[.]" ' " (*San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 774 [192 Cal.Rptr. 415], quoting § 6252, subd. (e).) But the mere possession by a public agency of a document does not make the document a public record. (*City Council v. Superior Court* (1962) 204 Cal.App.2d 68, 73 [21 Cal.Rptr. 896].)

■ The Public Defender contends the database is not a public record because its core function, the representation of indigent criminal defendants, is a private function. We agree. Although the requested database was prepared, used and retained by the Public Defender as required under section 6252, subdivision (e), the critical question is whether the information contained therein relates to the conduct of the "public's business." On this issue,

the Public Defender relies on *Polk County v. Dodson* (1981) 454 U.S. 312 [102 S.Ct. 445, 70 L.Ed.2d 509] (*Polk*).

 In *Polk*, a criminal defendant sued his public defender attorney under 42 United States Code section 1983, alleging denial of due process. The Supreme Court examined the public defender's function, and not simply its relationship with the state, in determining whether the public defender attorney had acted under color of state law for purposes of liability under 42 United States Code section 1983. The court concluded that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding because the public defender is serving an essentially private function, adversarial to and independent of the state. (*Polk, supra*, 454 U.S. at pp. 318, 325 [102 S.Ct. at pp. 449-450, 453-454].) In this capacity, the public defender maintains the same level of professional independence as a private attorney, and the state is constitutionally obligated to respect this independence. (*Id*. at pp. 321-322 [102 S.Ct. at pp. 451-452].)

 Although the facts and procedural context in *Polk* are distinguishable, the principle stated therein is apposite, as recognized by the Florida Supreme Court, which applied the *Polk* rationale in a case involving a public records dispute. In *Kight v. Dugger* (Fla. 1990) 574 So.2d 1066 (*Kight*), the Florida Supreme Court considered whether the records of a criminal defendant's trial counsel were subject to disclosure under Florida's Public Records Act during postconviction litigation by virtue of the fact that the records had been provided to the Office of Capital Collateral Representative (CCR), a governmental agency appointed to represent a defendant at postconviction proceedings. (*Id*. at p. 1068.) The court concluded that files in the possession of the CCR "in furtherance of its representation of an indigent client [were] not subject to public disclosure" under the Florida's Public Records Act and "[t]o hold otherwise would subject the records of a defendant who is unable to retain private collateral representation to public disclosure while those of a defendant represented by private counsel would be immune from such disclosure." (*Id*. at p. 1069.) Although the California Supreme Court has not addressed this issue, it has recognized the principle that a public defender is not a state agent, but rather acts as a private attorney when representing clients. (*In re Hough* (1944) 24 Cal.2d 522, 528-529 [150 P.2d 448].)

While the court's statements in *Kight* appear in the context of the representation of a single client and address disclosure of that individual's file, the fact some of the information in the database may not be attached to a particular client file is not dispositive because it does not change the nature of the information into that relating to the "public's business." As explained

below, we believe the creation of the database represents a logical application of the traditional functions of defense counsel.

Here, the Public Defender has "scanned" or copied the information contained in its paper client files into a computer database. Information contained in client files includes discovery provided by prosecuting agencies, information provided by clients, information gathered by the Public Defender through its own investigative efforts, court minute orders, probation reports and other case related documents. The database allows individual Public Defender attorneys to quickly and efficiently access case files without having to send an employee to a distant storage facility to search for and retrieve a closed file. However, all restrictive court orders are obeyed and information is "source coded" to prevent the dissemination of restricted information, including the names of witnesses released as the result of a *Pitchess* motion.

The Public Defender has created indices of its closed files so that its attorneys representing individual clients may access the electronically stored information in performing their duties. The Public Defender has articulated a number of legitimate reasons for accessing information in a closed case file, including (1) representing the same client on a probation revocation or on a new criminal charge; (2) discovering witness statements to assist in a new case; (3) discovering alleged patterns of Fourth Amendment violations by law enforcement officers; (4) researching for previous internal investigations relating to police misconduct; and (5) copying the file for appellate counsel or the client.

The Public Defender has also devised a computer program so that information in its client files can be integrated and then supplemented with information from other public sources. Thus, information needed on a recurring basis, such as performance information for sworn law enforcement officers, is readily accessible. Rather than requiring an individual public defender attorney to physically retrieve multiple client and general information files and then manually sort through the information, the computer does the work, quickly and efficiently, to the benefit of the entire office and all current and future clients. To that extent, the database is merely a different storage medium for information already contained in existing Public Defender files and available from other public sources.

We believe the database represents a logical application of the traditional functions of defense counsel because the information contained therein is partially assembled from individual client files—files created by the Public Defender as counsel to defendants in criminal proceedings. The collected

information is then retained and used to assist in the defense of existing and future clients. These are private functions to which the Public Defender is entitled to maintain a level of independence equivalent to a private attorney. (*Polk, supra*, 454 U.S. at pp. 321-322 [102 S.Ct. at pp. 451-452].) The fact the database also includes information not originally contained in client files does not change this conclusion because the purpose of assembling and retaining the information is to assist in the defense of existing and future clients, a private function not relating to the conduct of the public's business. (§ 6252, subd. (e).)

At oral argument, counsel for the Association stated the goal of the petition was to enable individual officers to access information in the database that is not attached to any particular case in order to correct inaccuracies or to assert privacy rights. After reviewing the database it apparently intends to pursue a separate action to remove from the database material it deems the Public Defender is not entitled to retain, such as *Pitchess* material or material allegedly obtained in violation of the privacy rights of its members. But the Public Defender is charged with protecting the interests of the clients it serves. To perform its work, the Public Defender must be allowed to assemble information so that it can sift through available facts in order to prepare legal theories and plan strategy. (See *Hickman v. Taylor* (1947) 329 U.S. 495, 510-511 [67 S.Ct. 385, 393-394, 91 L.Ed. 451].) To carry out this work, it must be free from unnecessary intrusion. (*Ibid.*) Allowing the Association or other entities or individuals to dictate what information the Public Defender may retain and evaluate would unnecessarily intrude upon its work, when private defense counsel is not subject to similar intrusion.

This decision does not imply that all documents possessed by the Public Defender regarding the database are private rather than public records. Records containing information concerning the administrative decision to compile the database, the cost of maintaining the database or rules applying to its access and use are policy decisions made by the Public Defender in its capacity as the administrator of a public office. A court could properly conclude that such documents are public records because they relate to the public's business and not the representation of clients.

While the dissent concludes the database is a public record, it never directly responds to our conclusion that the database is not a public record because it does not "relat[e] to the conduct of the public's business." (§ 6252, subd. (e).) Instead, the dissent tenders two primary arguments to support its conclusion that the database must be a public record. The first argument is that the generic information gathered is not related to the

representation of any particular client, thus the activity is carried out in a dominantly administrative capacity. The second argument is that the creation and maintenance of the database is conducted with public funds as an administrative function, rather than involving specific clients.

The dissent would apparently concede that information contained in individual client files is not a public record because it relates to the representation of individual clients. In fact, the Association argued before the trial court that the public should not have a right to view information contained in individual client files. Yet, the dissent's first argument ignores the record in this case showing that the database is primarily comprised of information from client files, collected for the representation of individual clients. This information is then augmented by additional data from other public information sources.

Significantly, there is no indication in the record that the Public Defender is doing anything differently than it did prior to the creation of the database. The Public Defender has always kept hard copies of its client files; that it now scans those files, indexes the files and implements a computer program to allow it to integrate its client files with information obtained from public sources does not render the files public records. There is no evidence that the Public Defender suddenly discovered that newspaper articles and other public information sources may contain data helpful to the defense of its clients and that collecting and retaining this information would be beneficial to the defense of present and future clients. While the dissent characterizes this latter activity as "snooping," it is nothing more than what a private law firm and its individual attorneys do to further the interests of its clients. Simply ignoring public sources of information about recurring witnesses could lead to legal malpractice liability and claims of ineffective assistance of counsel.

We fail to see how placing this information into a computer database is any different than individual public defender attorneys sharing the information orally or in writing. The dissent declares that "[i]t is the institutional nature of the public defender's office and the administrative decisions of its management that make the creation of such a database possible." (Dis. opn., *post*, at p. 1022.) While this may be a true statement, it is also meaningless. The dissent would have the Public Defender take individual client files and impeachment evidence gathered for a particular client and seal it from all but the lead attorney actually representing the individual client. There is no support in law or logic for such a position. Moreover, it ignores the fact that the Public Defender's office works in a team environment and functions like any law firm so that the combined resources of the firm can be used to

further the interests of all its clients. We do not accept the dissent's position that the database is a public record merely because the storage medium makes information in client files easily accessible or because some of the information in the database (though obtained from public sources) did not originate from a particular client file or is shared by more than one client.

The dissent also fails to recognize that the database does not exist to further any governmental process. Rather, the Public Defender created the database primarily out if its client files to serve the interests of individual indigent clients. Simply put, we have a difficult time understanding what the dissent is objecting to. Is it the fact that the Public Defender keeps client files and allows these files to be reviewed by individual Public Defender attorneys not connected to the case? Is it the fact that the Public Defender chooses to collect and retain information about the performance of peace officers from other public sources? Or is it the fact that the Public Defender can access all this information quickly because it no longer needs to physically review numerous individual pieces of paper?

The dissent then contends that the database is a public record because it was created with public funds. The dissent cites no authority supporting this assertion. We agree with the general contention that the public has a strong interest in documents pertaining to the use of public funds. (E.g., *Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 616-617 [65 Cal.Rptr.2d 738] [public has interest in records pertaining to government's conduct in managing public revenues]; *Ohio ex rel. Beacon Journal Publishing Company v. Bodiker* (1999) 134 Ohio App.3d 415 [731 N.E.2d 245, 252-255] [financial records, budgetary records or other materials detailing staff time and public money spent on a particular case is a public record].) But, the Association has not requested information about the public funds expended in creating and implementing the computer program that indexes and organizes the information in the database. Taking the dissent's position to its logical conclusion, every document written on a government owned computer or with government purchased pen and paper would become a public record. We submit that this is not the proper test.

Finally, we are compelled to note that the dissent has mischaracterized what is in the database. The Public Defender obtains information about police practices from public information sources; thus, there is nothing in the record to support the dissent's suggestion that the Public Defender is involved in collecting, storing or disseminating private or personal information about police officers or other public officials.

■ Privacy interests generally fall into one of two categories: "(1) interests in precluding the dissemination or misuse of sensitive and confidential information ('informational privacy'); and (2) interests in making

intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy')." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 35 [26 Cal.Rptr.2d 834, 865 P.2d 633].) ▇▇▇ Here, the Public Defender is retaining information about the official duties performed by peace officers obtained from client files and available from public information sources for the necessary purpose of representing indigent criminal defendants.

We fail to see what privacy right Association members have in information pertaining to their general job performance. To the extent the database contains the personnel records of Association members (*Pitchess* material), this information is not shared and it is separately coded and maintained. (*People v. Alford* (2003) 29 Cal.4th 1033, 1042 [130 Cal.Rptr.2d 672, 63 P.3d 228] [*Pitchess* material limited to case in which it was sought and cannot be shared].) Should an individual Public Defender improperly offer *Pitchess* material into evidence, appropriate action can be taken including contempt, sanctions or a report to the State Bar for disciplinary action.

Moreover, simply reviewing the entire database will not allow the Association to determine whether *Pitchess* material is improperly made available in violation of restrictive court orders. Rather, this must be ascertained by reviewing protocols established by the Public Defender for use of the database, information regarding the inputting and source coding of data, and possibly the raw computer program itself. Although the Association has not requested these records, and thus the question is not before us, these documents would probably be deemed public records because they are administrative in nature.

Even if some "private" information found its way into the database, it could only be disseminated in a courtroom after a trial judge has determined its relevance and admissibility. Should the Public Defender improperly disseminate inaccurate information outside the litigation context that is harmful to an Association member, that member has an adequate remedy in existing tort law. (Civ. Code, §§ 45 [libel], 46 [slander].)

*The Database Is Exempt Under Section 6255*

Even if we assume the database is a public record, we find it would be exempt from disclosure under the "catchall" exemption. (§ 6255.) ▇▇▇ Under section 6255, a public agency may withhold a public record for policy reasons if it can demonstrate that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255.) The existence

and weight of the public interest in disclosure are conclusions derived from the nature of the information requested. (*Connell v. Superior Court, supra,* 56 Cal.App.4th 601, 616.) Significantly, it is the public interest, not the private interest of the requesting party, that is considered and the public agency bears the burden of clearly demonstrating a need for nondisclosure. (*Id.* at pp. 616-617; *City of San Jose v. Superior Court* (1999) 74 Cal.App.4th 1008, 1018 [88 Cal.Rptr.2d 552].)

██ We reject the Association's argument that the Public Defender waived the right to rely on section 6255 by not arguing this exemption. The Public Defender raised section 6255 in its answer by contending the public interest in nondisclosure substantially outweighed the public interest in disclosure. ██ Our review of the trial court's ruling involves the application of the law to undisputed facts. (*CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 906 [110 Cal.Rptr.2d 889].) Under these circumstances a new theory can be raised for the first time on appeal; thus, we requested supplemental briefing addressing this exemption. (*Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680] [reviewing court may decide case on any legal theory, whether or not urged by counsel in appellate brief].)

██ The Association suggests an in camera review is required to determine whether the section 6255 exemption applies and that such a review would reveal the database does not constitute attorney work product as claimed by the Public Defender. But it never asked the trial court to conduct such a review. While the dissent would prefer an in camera review of the database rather than relying on the sworn representations of the Public Defender about its contents, an in camera review is not required as a matter of law, but is left to the sound discretion of the trial court. (*California First Amendment Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 174 [78 Cal.Rptr.2d 847]; *Register Div. of Freedom Newspapers, Inc. v. County of Orange* (1984) 158 Cal.App.3d 893, 901 [205 Cal.Rptr. 92]; *Yarish v. Nelson* (1972) 27 Cal.App.3d 893, 903-904 [104 Cal.Rptr. 205].)

The Association articulated three reasons why the public has an interest in the database because the database may: (1) violate its members' rights to privacy; (2) contain peace officer personnel records (*Pitchess* material); or (3) contain inaccurate information. We find these arguments unpersuasive.

Article I, section 1 of the California Constitution includes the right to privacy among the various inalienable rights of all people. The Association correctly argues that the public has a strong interest in prohibiting the unnecessary collection and retention of personal information. (*White v. Davis*

(1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) The question presented is whether the information collected and retained by the Public Defender is "necessary" to its function as counsel to indigent criminal defendants. We conclude it is.

Sworn law enforcement officers are frequent witnesses in criminal proceedings. Thus, evidence bearing on their credibility is always relevant. (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 9 [82 Cal.Rptr.2d 413, 971 P.2d 618].) In determining the credibility of a witness, the trier of fact may consider any matter tending to prove or disprove the truthfulness of the witness's testimony. (Evid. Code, § 780.) For example, evidence of past misconduct may tend to show the witness has some motive, bias, or interest that might induce false testimony. (Evid. Code, § 780, subd. (f); *People v. Mickle* (1991) 54 Cal.3d 140, 168 [284 Cal.Rptr. 511, 814 P.2d 290].)

The database at issue assembles information collected from individual client files and various public sources on recurring issues such as police performance. This allows the Public Defender attorneys to quickly and efficiently share information without having to undertake a new investigation. Since Public Defender attorneys carry a heavy workload (more than 12,000 felony and 14,000 misdemeanor cases a year), individual clients undoubtedly benefit from this effort to conserve time and resources. The database is compiled by the Public Defender for the legitimate purpose of providing representation to criminal defendants. Thus, the collection and retention of this information is important to the efficient functioning of the Public Defender's office.

The Association presented no evidence supporting its contention that the database contains peace officer personnel records (*Pitchess* material) or that the Public Defender improperly used any such information. In contrast, the Public Defender submitted evidence that *Pitchess* material and information derived therefrom is separately maintained and that all restrictive court orders are obeyed. The Public Defender admits that its database may contain inaccurate information; however, this information is identified and must be retained to show appellate defense counsel what was done to prepare for trial and to explain why witnesses were not called or why possible impeachment evidence was not used.

The public interest is not served by disclosing potentially inaccurate information. In contrast, Public Defender attorneys accessing the database have a professional obligation to use their independent judgment in determining whether any information contained therein is relevant to their particular client. They can disregard information identified as "inaccurate" and

they have the resources to undertake additional investigation to determine if other information is accurate before offering it into evidence at trial in defense of a client. Making the database accessible to the public upon demand under the Act eliminates safeguards preventing the dissemination and use of inaccurate information, such as objections and motions that can be made by the prosecution when information in the database is offered by the Public Defender as evidence during trial. Moreover, the trial court retains the discretion to review any impeachment evidence in camera before it is admitted into evidence.

Requiring the Public Defender to disclose the contents of its database on demand would be detrimental to the public interest in providing legal representation to indigent criminal defendants. Significantly, impeachment material is not discoverable and disclosure of the database to the public would severely disadvantage the Public Defender as compared to private defense counsel. (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 377, fn. 14 [285 Cal.Rptr. 231, 815 P.2d 304]; see also *Hubbard v. Superior Court* (1997) 66 Cal.App.4th 1163, 1169 [78 Cal.Rptr.2d 819].) While the Association emphasized that it sought the information as citizens, not as representatives of the prosecution or as individuals interested in any criminal proceeding, the purpose for which it desires access to the database is irrelevant. (§ 6257.5.) A conclusion that the database is a nonexempt public record applies equally to any individual or entity seeking its disclosure. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 664, fn. 2 [230 Cal.Rptr. 362, 725 P.2d 470].)

▉ The intent of the Act is "to safeguard the accountability of government to the public . . . ." (*Wilson v. Superior Court* (1996) 51 Cal.App.4th 1136, 1141 [59 Cal.Rptr.2d 537].) To verify accountability, individuals must have access to government files to check for the arbitrary exercise of official power and secrecy in the political process. (*CBS, Inc. v. Block, supra,* 42 Cal.3d at p. 651.) ▉ When representing clients the Public Defender performs a private function and it is held to the same professional standards as private defense counsel. (*Polk, supra,* 454 U.S. at pp. 318, 325 [102 S.Ct at pp. 449-450, 453-454]; *Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704].) The Public Defender is held accountable for the decisions it makes regarding the representation of its clients by potential malpractice liability and it is not entitled to civil malpractice immunity under section 820.2. (*Barner v. Leeds, supra,* 24 Cal.4th at p. 691.)

▉ For these reasons, the interest of the general public in what information the Public Defender retains for the representation of its clients is slight. Again, it is the public interest that is considered not the private

interest of the requesting party. (*Connell v. Superior Court, supra,* 56 Cal.App.4th at pp. 616-617.) Individual members of the Association have an adequate remedy for violation of their privacy rights should the Public Defender improperly utilize or disseminate private information outside the litigation context. (Civ. Code, § 47,. subd. (b).) Nothing in this opinion is intended to impede this fundamental right.

The Public Defender compiles the database to further its primary function of representing clients. Allowing the public to have access to the database on demand would undermine the Public Defender's ability to perform this function and would not further the public's interest. For these reasons we conclude the public interest served by not disclosing the database clearly outweighs the public interest in disclosure.

## DISPOSITION

The appeal is deemed a petition for extraordinary relief; the petition is denied. The Public Defender is entitled to costs.

Nares, J., concurred.

**HUFFMAN, Acting P. J.,** Concurring and Dissenting.—The majority opinion, if allowed to stand, will permit an agency of local county government to collect, store and disseminate dossiers on individual citizens who work as police officers, or other public officials, free from the privacy protections of the California Public Records Act. (Gov. Code,[1] § 6250 et seq., the Public Records Act or the Act.) How can it be that records owned and compiled by a government agency, stored and maintained with public funds, that include both public and private information about individual citizens, regardless of their profession, are other than public records? The answer the majority provides is simple: The "core function" of the San Diego County Public Defender's office is "private," therefore this particular, publicly owned "database" is not about the "public's business." (§ 6252, subd. (e).) I find that answer both amazing and disturbing. That a governmental agency can maintain dossiers on citizens with impunity from any form of public scrutiny is not made more comforting by the fact it is the agency of the public defender that is involved, instead of the sheriff or district attorney, particularly when the record before us makes clear these files are not maintained for the defense of specific individual clients. The files in question are collected on people: individual police officers or public officials, just in case the public defender might need the information one day. After all, the majority says, that is more efficient. I submit that the

---

[1]All statutory references are to this code unless otherwise indicated.

Public Records Act is designed to protect privacy and is willing to sacrifice some governmental "efficiency" to achieve that important purpose.[2]

Privacy from governmental snooping into the private or even public affairs of citizens is provided by a comprehensive scheme of public inspection of the government's records under the Act, except where there is a legitimate need to permit governmental secrecy. (§ 6253.) The public defender's office is a governmental agency, and no matter how lofty its stated purposes, it is still not entitled to collect intelligence files on citizens without some form of protection for the privacy rights of those citizens.

I submit the majority, adamantly opposed to any disclosure of the "database," has put the disclosure cart in front of the definition horse and has utterly refused to follow the Public Records Act. The majority declares as much in its opinion stating "the database is not a public record; and *even if it is, it would be exempt from disclosure under the Act's 'catchall' exemption (§ 6255) because the public interest in nondisclosure clearly outweighs the public interest in disclosure.*" (Maj. opn., *ante*, at p. 1004, italics added; see also maj. opn., *ante*, at p. 1012.) My response to that statement is that if the database is not a public record, then there is no need to even discuss section 6255 because it would be irrelevant. In these proceedings, there has never been a full hearing on the issue of whether the public interest favors disclosure of any or all of these files. The trial court found the files were not public records, hence it never inspected them. If, as I believe, the trial court erred, and the database is a public record "relating to the conduct of the public's business" (§ 6252, subd. (e)), then there is no basis in this record for this court to determine for the first time on appeal what the appropriate public interest to support disclosure may be.

Unfortunately, the majority has declined to follow the rational processes of the Act, which would require a finding that these records are public records, and would then mandate a full hearing on the issue of their availability for inspection. Instead, the majority has created a strange beast: a publicly owned set of files, not maintained in connection with the representation of any individual client, which are, at the same time, a little bit public and a little bit private. I suggest it has described a critter unknown to the California Legislature; assuming this creature ever existed, it was probably rendered extinct by the passage of the Act.

---

[2]It should be obvious to the reader that the dissent was written in response to a different draft of the majority opinion. The majority has redrafted and attempted to shore up its analysis. Much of the new draft is devoted to a criticism of the dissent. While it is tempting to return the volley, frankly nothing in the new draft requires a new round of responsive critiques. I remain unconvinced by the new majority draft and stand by the views I have expressed in this dissent.

Accordingly, returning to the two issues identified in the majority holding quoted above, I will first discuss the definition of public records in light of this record, and then turn to the exemptions issue, assuming it is properly before us. First, however, I wish to note that I concur in the majority analysis on appealability and agree the case is properly before us on appeal. (§ 6259.)

I also wish to note the extent to which there is agreement between the parties on the important issues presented: It is not disputed that the public defender represents a public agency, funded by taxpayer dollars, within the meaning of section 6252, subdivisions (b) and (d). (§ 27700 et seq.; see *Barner v. Leeds* (2000) 24 Cal.4th 676, 683 [102 Cal.Rptr.2d 97, 13 P.3d 704] (*Barner*) [a deputy public defender is a public employee within the meaning of the California Tort Claims Act, and acts within the scope of employment when representing assigned clients charged with criminal offenses; such deputy public defenders and privately retained counsel each owe the same duty of care to their clients], citing, inter alia, *Polk County v. Dodson* (1981) 454 U.S. 312, 318, 321 [102 S.Ct. 445, 449-450, 451, 70 L.Ed.2d 509] (*Polk*).) It is also essentially conceded here that, to the extent the challenged database has been collected pursuant to policy decisions made by the public defender in the capacity of administrator of a public office, such documentation would clearly constitute public records subject to disclosure within the meaning of section 6252, subdivision (e). Those specific records clearly subject to disclosure as public records would include those containing information regarding the administrative decision to compile the database, the cost of maintaining the database or rules applying to its access and use.

However, the matter does not end here. The police officers associations (the Association) further contend that the creation and maintenance of the database for eventual use of impeachment of police officer witnesses fall within the public records definitions in the Act, and there are no applicable exemptions because the use of the database has not currently been shown to be within the scope of any legal representation of individual defendants by the public defender's office. Moreover, as was discussed at oral argument below, the Association raises the possibility that this database is equivalent to a dossier being kept on peace officers, concerning their private lives as well as their performance of their official duties, through the use of public funds, without safeguards regarding accuracy or privacy. From all that the record reveals, the information collected is accessible to employees of the public defender's office by using references to individual citizens' names, when those individual citizens have come to the attention of the office by serving as police officers or other public officials. I part company with the majority on the proper characterization of this information under the Public Records Act.

I

*Public Records Characteristics of the Database*

The terms of the Public Records Act were summarized by this court in *Poway Unified School Dist. v. Superior Court* (1998) 62 Cal.App.4th 1496, 1501 [73 Cal.Rptr.2d 777], as specifying "that any public record in the possession of a state or local agency must be disclosed to any citizen unless an exemption applies. (§ 6253.)" The Act sets forth both specific exemptions and a catchall withholding clause that allows nondisclosure of a record if the government can demonstrate that public policy necessitates nondisclosure. (*Poway, supra,* at p. 1501, citing §§ 6254, subd. (b), 6255.) "Public records" is defined in broad terms, to include: " '[A]ny writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics.' " (*Poway, supra,* at p. 1501, citing § 6252, subd. (d).) "This broad definition is designed to protect the public's need to be informed regarding the actions of government . . . . Indeed, secrecy is 'antithetical to a democratic system of "government of the people, by the people [and] for the people." ' [Citation.]" (*Poway, supra,* at p. 1501.)

The definition of "public records" under the Act is " ' "intended to cover every conceivable kind of record that is involved in the governmental process . . . ." ' " (*San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 774 [192 Cal.Rptr. 415].) The purpose for which access to public records is sought is irrelevant. (§ 6257.5.) A conclusion that the database is a nonexempt public record applies equally to any individual or entity seeking its disclosure. (§ 6253, subd. (a); *Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 610-612 [65 Cal.Rptr.2d 738] (*Connell*).)

The overall intent of the Act is "to safeguard the accountability of government to the public . . . ." (*Wilson v. Superior Court* (1996) 51 Cal.App.4th 1136, 1141 [59 Cal.Rptr.2d 537].) To verify accountability, individuals must have access to government files to check for the arbitrary exercise of official power and secrecy in the political process. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651 [230 Cal.Rptr. 362, 725 P.2d 470].) The policies of the Act operate in conjunction with and subject to article I, section 1 of the California Constitution, which includes the right to privacy among the various inalienable rights of all people. It is well recognized that the public and its citizens have a strong interest in prohibiting the unnecessary collection and retention of personal information. (*White v. Davis* (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222].) The strength of this interest may be discerned from reviewing the "legislative history" of the

article I, section 1 constitutional amendment adding the privacy provision, i.e., the ballot statement referred to in *White*: "[T]he statement identifies the principal 'mischiefs' at which the amendment is directed: (1) 'government snooping' and the secret gathering of personal information; (2) the overbroad collection and retention of unnecessary personal information by government and business interests; (3) the improper use of information properly obtained for a specific purpose, for example, the use of it for another purpose or the disclosure of it to some third party; and (4) the lack of a reasonable check on the accuracy of existing records." (*White*, at p. 775.)

It is also well recognized that the public has a strong interest in disclosure of records and documents pertaining to the use of public funds. (See *California State University v. Superior Court* (2001) 90 Cal.App.4th 810, 825 [108 Cal.Rptr.2d 870], citing *Connell, supra*, 56 Cal.App.4th at pp. 616-617, as follows: "public has interest in records pertaining to government's conduct in managing public revenues.")

The majority departs from this approach to conclude the public defender's database is not a public record because the core function of its office, the representation of indigent criminal defendants, is a private function. As support for this broad proposition, it relies on *Polk, supra*, 454 U.S. 312, a case arising in the context of a civil rights action by a former client of a public defender against the appointed attorney who had defended him, allegedly inadequately. (42 U.S.C. § 1983.) In *Polk*, the Supreme Court examined the public defender's professional function and employment status in determining whether the public defender attorney had acted under color of state law for purposes of liability under 42 United States Code section 1983. The court concluded that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, because the public defender is serving an essentially private function, adversarial to and independent of the state. (*Polk, supra*, 454 U.S. at pp. 318, 325 [102 S.Ct. at pp. 449-450, 453-454].) In this capacity, the public defender maintains the same level of professional independence as a private attorney, and the state is constitutionally obligated to respect this independence. (*Id.* at pp. 321-322 [102 S.Ct. at pp. 451-452].) Accordingly, the complaint by the client alleging that his public defender's actions, including a motion to withdraw from representation of him, had deprived him of his civil rights (e.g., right to counsel, right against cruel and unusual punishment, and/or right to due process of law), failed to state a claim under 42 United States Code section 1983. It was insufficient for the client to allege that the public defender had acted "under color of state law," a jurisdictional requisite for an action, by relying on her employment by the county, a public agency. (*Polk, supra*, 454 U.S. at p. 315 [102 S.Ct. at

p. 448].) In my view, the principles set forth in *Polk* do not support, let alone compel, the conclusion reached by the majority that the subject database is a private record on this issue of first impression.

It is first necessary to recognize the context of the ruling in *Polk, supra,* 454 U.S. 312, a civil rights action arising under 42 United States Code section 1983. This procedural context cannot be disregarded in assessing the applicability here of its statements about the capacity in which a public defender acts. The purposes of this federal statute have been summarized as follows: It provides a civil action "to protect persons against misuse of power possessed by virtue of state law and made possible because the defendant was clothed with the authority of the state. . . . [¶] 42 U.S.C.A. § 1983 basically seeks to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide related relief. [¶] The goal of 42 U.S.C.A. § 1983 is to deter public officials from violating citizens' federal rights and to compensate the victims of such official wrongdoing. The statute was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations as well." (15 Am.Jur.2d (2000) Civil Rights, § 63, pp. 275-276, fns. omitted.)

In *Polk, supra,* 454 U.S. 312, the Supreme Court further clarified its holding: "In concluding that [the public defender] did not act under color of state law in exercising her independent professional judgment in a criminal proceeding, we do not suggest that a public defender never acts in that role. In *Branti* v. *Finkel,* 445 U. S. 507 (1980) [100 S.Ct. 1287, 63 L.Ed.2d 574], for example, we found that a public defender so acted when making hiring and firing decisions on behalf of the State. *It may be—although the question is not present in this case—that a public defender also would act under color of state law while performing certain administrative and possibly investigative functions.* [Citations.] . . . [We] decide only that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (*Polk, supra,* 454 U.S. at pp. 324-325 [102 S.Ct. at p. 453], italics added.) Accordingly, in *Polk,* the main concern of the United States Supreme Court was whether the public defender had acted as an arm of the state in declining to represent the indigent client as the client saw fit, despite the lack of legal merit for his desired position.

*Polk, supra,* 454 U.S. 312, has been cited as a representative of the decisions that narrow the state action jurisdictional requirement for a federal civil rights action, as part of a line of United States Supreme Court authority that limits the reach of 42 United States Code section 1983. (1 Steinglass,

Section 1983 Litigation in State Courts (2002) § 1983 Remedies, § 2:5, pp. 2-8 to 2-20.) Although an action in federal court under section 1983 will constitute the principal means for asserting federal civil rights claims against state or local defendants, not all alleged violations of federal law are actionable under section 1983, for reasons of standing or other procedural doctrines. (Steinglass, § 2:5, pp. 2-8 to 2-20.)

As the majority notes, the Florida Supreme Court has applied the *Polk* rationale in a case involving a public records dispute. (*Kight v. Dugger* (Fla. 1990) 574 So.2d 1066, 1069 [records of criminal defendant's trial counsel not subject to disclosure to the prosecution under Florida's Public Records Act merely because records had been provided to a governmental defense agency appointed to represent defendant at postconviction proceedings].) However, *Kight* is distinguishable because there, the basis for the court's conclusion (that no disclosure was required of the public defender's files to the prosecutor) was that those files which related to a specific defendant were in the possession of the agency in furtherance of its representation of an individual indigent client. The court said, "To hold otherwise would subject the records of a defendant who is unable to retain private collateral representation to public disclosure while those of a defendant represented by private counsel would be immune from such disclosure." (*Ibid.*) Those considerations are not relevant to the issues before this court, because no disclosure has been sought by the prosecution, nor is there any allegation that this database was compiled specifically in furtherance of the representation of an individual indigent client, as in *Kight*, nor is there any allegation that any private counsel are currently maintaining the same type of database as is the public defender, such that any equal protection concerns are involved. (See also *Long v. Dillinger* (Fla. 1997) 701 So.2d 1168, 1169 [also a Florida case, distinguishing *Kight*'s statement that a public defender's file is the private record of the defendant, as being made in the context of explaining why appellate defense counsel who inherited the file should not have to disclose the file to the state prosecuting attorney; further holding that the public defender did not have to surrender its original trial file to appellate counsel for the defense, but must make it available for copying].) It is the institutional nature of the public defender's office and the administrative decisions of its management that make the creation of such a database possible.

On a side note, it seems fruitless here to attempt to base an analysis of the Public Records Act's definitions provisions on a distinction between the public defender's status as an employee of a public governmental agency, and the status of privately retained defense counsel, with respect to a privilege to collect information about private citizens or public officials. The

majority, relying on its view that the database is a creation of the private "core function" of the public defender, observes: "Allowing the Association or other entities or individuals to dictate what information the Public Defender may retain and evaluate would unnecessarily intrude upon its work, when private counsel is not subject to similar intrusion." (Maj. opn., *ante,* at p. 1009.) Respectfully, such analysis fails to accurately characterize the current proceeding or the data at issue. It is clear from the record that the decision to create the database was that of a government administrator and is not directly related to any individual client. It is a decision by a government agency to expend its resources in a particular manner and to accumulate data on individual citizens and public officials, for institutional reasons. It is clear from the decision in *Polk, supra,* 454 U.S. 312, that when the public defender functions outside of the demands of individual representation of clients, it does so in a governmental and administrative role and it is therefore, I submit, legitimately subject to the same privacy restrictions as any other governmental agency.

In light of these considerations, a proper reading of *Polk, supra,* 454 U.S. 312, and its progeny demonstrates that not only are those unusual facts distinguishable, but its guiding principle relied upon by the majority is inapposite here, because (1) we should not be concerned with whether a public defender acts under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, but rather with whether the nature of the functions that are involved in the creation of this database actually falls within the performance of such traditional private functions of defense counsel, or whether they represent an unwarranted extension thereof; (2) nor can one justifiably view the creation of this database as being within the performance of a lawyer's traditional functions as counsel to a defendant in a criminal proceeding, in light of the generic nature of the information gathered, not shown to be specifically related to the purpose of performing such representation for any particular client at any particular time, by reason of the exercise of independent professional judgment in a criminal proceeding; (3) the public defender's office's activities in creating and maintaining the database are conducted with public funds as an administrative or background investigative function, rather than involving any specific client-related representational or strategy decisions; (4) in creating the database, the public defender is not serving an essentially private function that is adversarial to and independent of the state and which therefore deserves a high level of confidentiality and protection, but rather, there is a lack of individualized representation in the carrying out of the necessary processing of information and investigation in the database, and therefore this activity is carried out in a dominantly administrative or public agency capacity. (See *Polk, supra,* 454 U.S. at pp. 318, 325 [102 S.Ct. at pp. 449-450, 453-454].)

These conclusions are supported by the analysis set forth in a comparable Ohio case, which has not been discussed by the majority. In *Ohio ex rel. Beacon Journal Publishing Company v. Bodiker* (1999) 134 Ohio App.3d 415 [731 N.E.2d 245] (*Beacon Journal*),[3] a newspaper sought disclosure from a public defender's office of " 'all financial records, budgetary records or other material that itemizes, details or otherwise records staff time and public money spent on [an executed defendant's] case' " (*Beacon Journal, supra,* at p. 249), due to an interest in the effort invested in defending the deceased. The request was denied, and the newspaper filed a complaint in mandamus, requesting a writ ordering the public defender's office to furnish it with reasonable access and the right to inspect and copy the requested financial and time records. The court found that although records reflecting the public defender's exercise of professional judgment on behalf of the indigent client in the actual criminal proceeding would be protected from disclosure, other recordkeeping activities "including recording attorney time sheets for efficiency purposes, entering those time records into a computer database, and memorializing contractual agreements with private parties," (*id.* at p. 252) related only tangentially, if at all, to the actual case-related exercise of professional judgment on behalf of the indigent client in the actual criminal proceeding. In reaching its conclusions, the Ohio court declined to rely on the holding of *Polk, supra,* 454 U.S. 312, because that case "focused on the actual representation of the accused, which the court held to be 'essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.' [Citation.]" (*Beacon Journal, supra,* 731 N.E.2d at pp. 251-252.) *Polk, supra,* 454 U.S. 312, was not dispositive in the case before the Ohio court, which involved a public records request controlled by the statutory definition of "public office," rather than the "color of state law" concept for the purposes of pursuing a civil action under 42 United States Code section 1983. (*Beacon Journal, supra,* 731 N.E.2d at p. 251.)

Accordingly, the court in *Beacon Journal, supra,* 731 N.E.2d 245, found the public defender's time sheets, database, and contracts at issue in the particular defendant's case were public records under the Ohio statute and could be requested as such, and statutory exemptions asserted. (*Id.* at pp. 252-255.) All the available information in the record before us supports a similar distinction here between the background information gathering of this database, as an operational function of the office, as contrasted with the public defender's case-specific strategic and investigative decisions taken in the course of representing its individual clients.

In summary, the holding in *Polk, supra,* 454 U.S. 312, is a relatively narrow one, dealing with the scope of federal civil rights relief under 42

---

[3]The majority opinion now cites, but does not discuss or analyze this case. (Maj. opn., *ante,* at p. 1011.)

United States Code section 1983, and that holding is not appropriately dispositive in this public records disclosure context. With these authorities and approaches in mind, I next turn to the questions of law presented by the Association's disclosure requests, as resolved by other, more clearly applicable authority.

## II

### *Reconciliation of Competing Policies*

To resolve the issues presented under section 6252, subdivision (e), i.e., whether the information contained in the database relates to "the conduct of the public's business," one should examine the specific claims made by the Association in support of disclosure. The Association's request for disclosure sought "access to and inspection of any and all records compiled by your office for inclusion into any information database maintained on the law enforcement officers." At the trial court level, the Association outlined three reasons why the public, including its members, has an interest in the database, for the purposes of determining whether the database: (1) violates their right to privacy; (2) contains peace officer personnel records (*Pitchess* material; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]) that are subject to special protections under Penal Code section 832.5 et seq., and Evidence Code sections 1043 and 1045, or (3) contains inaccurate information, such as outdated newspaper reports or unsubstantiated allegations in court or civil service filings. The Association took the position that its members were not seeking disclosure of this information as agents for the prosecution or as witnesses in any particular criminal or civil case, but rather they sought access to the database in their capacities as members of the public who were individual citizens who have a legitimate interest in the accuracy and extent of the personal and private information, as well as personnel matters, contained in the database.

To support the public defender's position that the information collected and retained in the database is necessary to its function as counsel to indigent criminal defendants, it argues that law enforcement officers are frequent witnesses in criminal proceedings. Thus, evidence bearing on their credibility is always relevant. (See *People v. Rodriguez* (1999) 20 Cal.4th 1, 9 [82 Cal.Rptr.2d 413, 971 P.2d 618].) In determining the credibility of a witness, the trier of fact may consider any matter tending to prove or disprove the truthfulness of the witness's testimony. (Evid. Code, § 780.) For example, evidence of past misconduct may tend to show the witness has some motive, bias, or interest that might induce false testimony. (Evid. Code, § 780, subd. (f); *People v. Mickle* (1991) 54 Cal.3d 140, 168 [284

Cal.Rptr. 511, 814 P.2d 290].) The database at issue assembles information collected from various sources on recurring issues such as police performance. This allows public defender attorneys to share, quickly and efficiently, such information without having to undertake a new investigation. Since public defender attorneys carry a heavy workload, individual clients presumably benefit from this effort to conserve time and resources.

Further, the public defender maintains it is not a state agent, but rather is acting as a private attorney when representing clients, and it seeks to prepare to represent its clients in this fashion. (See *In re Hough* (1944) 24 Cal.2d 522, 528-529 [150 P.2d 448].) When representing clients by appointment, the public defender is held to the same professional standards as private defense counsel. (*Polk, supra*, 454 U.S. at pp. 318, 325 [102 S.Ct. at pp. 449-450, 453-454]; *Barner, supra*, 24 Cal.4th 676, 683.) The public defender is held accountable for the decisions it makes regarding the representation of its clients through the potential for malpractice liability, and it is not entitled to civil malpractice immunity under section 820.2. (*Barner, supra*, 24 Cal.4th at p. 691.) Accepting the public defender's arguments, the majority concludes that due to the asserted purposes for which the database was assembled, the database is either private material that is protected from all disclosure, or it is exempt from the requested disclosure under the Act's specific provisions. (Maj. opn., *ante*, at pp. 1004, 1012-1013.)

However, I can find no basis in the record to support the public defender's position that the preparation and maintenance of this database is sufficiently closely related to its individualized representation of particular indigent defendants, at the present time or in the future, so as to immunize these records from all public disclosure. Under section 6253, there is a presumption that public records will be disclosed absent a lawful exemption or privilege. These records were prepared in a publicly funded office, by employees of the public agency, concerning employees of other public agencies. The public defender's assertion that the purpose of the database, to assemble information to further the representation of future as well as current criminal defendants, is purely private in nature, so as to invoke privacy rights on the part of the public defender's office that would take this matter out of "the conduct of the public's business" definition of section 6252, subdivision (e), is simply not supported by the manner of the creation or the use of the database. Even though the public defender has particularized duties towards its individual clients, that fact does not render the entire office private in nature for purposes of the Act, considering its public funding and the governmental aspects of its administration. Rather, the public as a whole has a very strong interest in being informed about the extent and nature of the recordkeeping by the public defender concerning

other public servants, quite apart from the interests of the individuals involved. (See *Connell, supra,* 56 Cal.App.4th at pp. 616-617.)[4]

The majority is impressed by the argument that such a database would be a convenience to the entire public defender's office. Although the public defender attorney staff seeks to use the database to access background information regarding prosecution witnesses such as law enforcement officers, rather than newly investigating each allegation as it arises, the privacy concerns of the individual officers involved cannot be ignored merely for the sake of efficiency. It would undoubtedly be very efficient for governmental agencies to have complete files on all citizens. Nevertheless, our societal interest in privacy has consistently demonstrated a willingness to forgo such an "efficient" form of government.

In light of the type of information that is reportedly being collected, including data not derived from client files but rather material from other court files, civil service proceedings, peace officer reports and newspaper articles, I think it is clear that the legitimate privacy concerns of individual citizens who are the subject of this information are implicated, along with the general public's interest in the conduct of the government's business. One cannot say as a matter of law that in every instance, the database is being prepared, used and retained by the public defender solely in furtherance of its duties as counsel to individual defendants in particular criminal proceedings. Rather, this activity appears to be an unprecedented extension of the public defender's representative capacity, which should properly invoke application of the Public Records Act, based upon its definitional provisions. In short, the mischiefs identified in *White v. Davis, supra,* 13 Cal.3d 757, at which the privacy provisions of the California Constitution are directed, are all implicated here: "government snooping," secret gathering of personal information, overbroad collection and retention of unnecessary personal information by government interests, the improper use of information that was properly obtained for a specific purpose, for other purposes, and the lack of any reasonable safeguards on the accuracy of existing records. (*Id.* at p. 775.)

## III

*Further Proceedings: Potential Exemptions Under Section 6254 or 6255?*

The majority's backup position is that although these files should not be considered public records, if they are, they must be exempt from disclosure

---

[4]The majority opinion declares I have not directly responded to its "conclusion that the database . . . does not 'relat[e] to the conduct of the public's business.' " (Maj. opn., *ante,* at p. 1009.) This portion of the dissent directly responds to and refutes the majority's conclusion.

under section 6255. The problem with this position is that as far as the record is concerned, we only have the public defender's characterization of the contents of the files, and the public defender did not pursue its affirmative defense of exemption under section 6255 in the trial court, relying instead on section 6254, subdivision (k). The majority characterizes the goal of the Association as stopping the public defender from retaining information about its members, particularly inaccurate information that is not attached to any particular case or information of a private nature. (Maj. opn., *ante*, at p. 1009.) The majority then disclaims any implication that "all documents possessed by the Public Defender regarding the database are private rather than public records." (*Ibid.*) It would allow disclosure only of rules and costs relating to the records. (*Ibid.*)

Thus far, no court has taken any evidence about the substantive nature of the records, in camera or otherwise, nor required the public defender to demonstrate the actual content of the files or how the public interest would be served only by complete secrecy. Without any inspection of the files by any judge or justice, the majority seeks to make that decision by engaging in a purported balancing of societal interests. It says that the interest of the general public in what information the public defender retains for the representation of its clients is slight. (Maj. opn., *ante*, at pp. 1015-1016.) However, in my view, simply accepting the public defender's assurance that all is well is too much like the discredited assurance, "Trust me . . . I am from the government and I am here to help." Respectfully, I would prefer a proper application of section 6255 by a trial court and a complete record before making such an important decision, assuming that the issue of status as a public record is first correctly resolved. It may be that after a real hearing, with appropriate in camera inspection of the records by a trial court, most or even all of the files may be found to be exempt from disclosure. It would not be logistically difficult to create such a procedure, once the appropriate structure is established pursuant to the Act.

In conclusion, I remain convinced that the public defender's database, or as I have called it, a collection of dossiers on individual public employees, is a public record. I believe a fair analysis of the appellate record shows the database is not directly related to the legal representation of individual clients, but rather is generally accessible by public employees using name references to individual citizens who work as public officials. I have no quarrel with the public defender's sincere desires to make his system more efficient, to better represent future clients, and perhaps, to redress what he perceives to be incidents of official misconduct. Presumably, the representatives of all other governmental agencies share the same sincere desires to do their jobs efficiently. Our society, however, has never been willing to

trust government power free from scrutiny. The Public Records Act and the California right of privacy contained in the state Constitution recognize the right of citizens and public officials alike to demand a limit to the ability of government to collect, store, and disseminate data on individuals.

Because the majority opinion does not recognize the true nature of the governmental actions involved in the collection of this database, it has failed to properly implement the policies of the Act and the state Constitution. This court should recognize the strong privacy interests at stake in this case and should reverse the trial court ruling, with directions to enter an order that the records at issue are public in nature, and to conduct further proceedings to resolve the scope of any legitimate claims of exemption from public disclosure. I therefore respectfully dissent.

Petitioners' petition for review by the Supreme Court was denied June 11, 2003.