[No. C022506. Third Dist. July 22, 1997.]

KATHLEEN CONNELL, as Controller, etc., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
INTERSOURCE, INC., Real Party in Interest.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I of the Facts.

## COUNSEL

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, Linda A. Cabatic and Susan R. Oie, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Livingston & Mattesich, Gene Livingston and Rebecca M. Ceniceros for Real Party in Interest.

## OPINION

DAVIS, J.—Plaintiff InterSource, Inc. (InterSource), requested information from defendant State Controller (Controller)[2] about warrants the Controller had issued to state vendors which were unpaid. The Controller refused to provide the information. InterSource then filed a petition for writ of mandate in the superior court to compel the disclosure of these public records. (Gov. Code, § 6258 [undesignated section references will be to this code].) The court issued a judgment directing disclosure under the same terms as its judgment in a case involving a similar request entitled Argent Research and Recovery, Ltd. v. Davis (Super. Ct. Sacramento County, No. CV380212) (*Argent*).[3]

The Controller has petitioned us for an extraordinary writ directing the superior court to set aside the present judgment, and requested a stay. (§ 6259, subd. (c).) We issued an alternative writ and a stay pending our plenary review of the matter. We now grant the writ only to direct a modification of a portion of the judgment and dissolve the stay.

For reasons set forth in the unpublished portion of the opinion, we draw our facts not only from the present record but from the record in *Argent* as well. To avoid confusion, we will change references as necessary to reflect the identity of the present parties and to account for the procedural posture of the present case.

---

[2]This action commenced in the waning days of the term of the present Controller's predecessor in office. We have substituted the incumbent officeholder in the caption.

[3]The Controller sought an extraordinary writ to set aside this other judgment, which we denied after plenary review. (*Connell* v. *Superior Court* (Sept. 24, 1996) C021229 [nonpub. opn.].)

FACTS

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

InterSource is an Oklahoma corporation which searches public records for unpaid warrants payable to vendors of goods and services. It then offers its services to the payee vendors for recovery of the funds.

Pursuant to the California Public Records Act (the Act), section 6250 et seq., InterSource sent a letter to the Controller in August 1994 requesting information. (§§ 6251, 6256). InterSource divided its request into two steps. First, it wanted the month and year of issue, amount (to the nearest $100), and number for *all* outstanding warrants over $3,000 predating August 1, 1993. After perusing this list, it would then request the payee, requesting-agency code, and control number (the latter only if kept in the same file) for specified warrants. It also wanted the same information for all canceled warrants.[7] It offered to reimburse the costs of responding to the request. The Controller denied the request on the ground the information was not subject to disclosure under the Act.

InterSource consequently commenced this litigation in November 1994. The Controller demurred, asserting InterSource could not maintain the action because it was not a "person" within the meaning of the Act (§§ 6250, 6252, subd. (c), 6253, 6257, 6258) and because it was not certified to do business in California. The superior court sustained the demurrer with leave to amend in order to allow InterSource to qualify to do business in California. Inter-Source filed an amended petition in February 1995 alleging it was now registered to conduct business in California. The Controller answered, alleging InterSource was "not qualified to do business in California" and transmuting the other basis for its demurrer into the affirmative defense that InterSource, as an Oklahoma corporation, was not within the Act's "purview."

In her opposition to the writ, the Controller cited the catchall provision of section 6255, which states, "The agency shall justify withholding any record by demonstrating . . . *that on the facts of the particular case the public interest served by [nondisclosure] . . . clearly outweighs the public interest served by disclosure of the record.*" (Italics added.) She thus argued the public had an interest in nondisclosure because providing the records would

---

*See footnote 1, *ante*, page 601.
[7]After four years, the Controller cancels outstanding warrants.

increase the threat of counterfeit warrants and the presentation of false claims. She analogized as well to the specific exemption for the investigatory and security files of law enforcement agencies. (§ 6254, subd. (f).)[8]

Another basis of her opposition was the principle that there is a public interest in nondisclosure where an agency will incur expense and inconvenience in segregating exempt from nonexempt information. (*American Civil Liberties Union Foundation* v. *Deukmejian* (1982) 32 Cal.3d 440, 452-453 [186 Cal.Rptr. 235, 651 P.2d 822] (*ACLU*).) Thus, the Controller argued the burden of producing a list of vendor warrants was excessive.

The Controller also disparaged any claim that these records furthered a public interest in insuring the state's accountability for the public fisc. She claimed these records would not illuminate the manner in which her office operated. She also argued disclosure would do no more than echo her own efforts to identify outstanding warrants and issue duplicate payments to the payees.

In support of her arguments, the Controller submitted two declarations. The first was from John Henry, who is the Controller's chief investigator. The Controller established his office in the 1980's in response to complaints by banks, check-cashers, and businesses about forged or counterfeit warrants; many businesses had begun to refuse to cash warrants, which worked a hardship on individual payees who did not maintain checking accounts. He cited individual examples of past instances involving forgery or counterfeiting. In his opinion, if the Controller were forced to provide *all* the requested information to any member of the public, anyone could produce a warrant which the Controller's verification procedures could not detect unless the real payee eventually came forward. Moreover, even if there were not a flood of counterfeit warrants, to provide the public with *all* the requested information would allow the criminally disposed to present false claims for duplicates of "lost" or "misplaced" warrants. Since forged and counterfeited warrants are charged back when detected to the institution honoring them, an increased problem with fraud could disrupt the Controller's relations with major banks.

The Controller also submitted a declaration by John Larrea, an assistant deputy controller. On the average, the Controller issues 125,000 warrants daily. These appear in a microfiche register in numerical order on the date issued, and the Controller updates the register daily. The Controller also

[8]When an agency raises the catchall provision as a defense, a court may analogize to the specific exemptions provided by the Act to identify situations in which nondisclosure furthers the public interest. (*Times Mirror Co.* v. *Superior Court* (1991) 53 Cal.3d 1325, 1338-1339 [283 Cal.Rptr. 893, 813 P.2d 240].) However, the specific exemptions are not an exhaustive list. (*Id.* at p. 1339.)

updates daily an "outstanding warrant file" on microfiche. A warrant is considered "outstanding" immediately upon issue until either paid by the State Treasurer or canceled after four years. As an example, on March 28, 1995, there were 2,100,000 warrants in this file. Access to the outstanding warrants file is limited to the employees who update it and the management team. The Controller regularly denies requests such as InterSource's. Mr. Larrea claimed the fields of data in the request are not contained in any one file, and omitting individual payees would require a manual search of the microfiche. To assemble these data and delete individual payees would require greater personnel resources than the Controller has available. Mr. Larrea also described the Controller's own program to identify outstanding warrants. As initiated in 1990, the program located warrants more than three years old in amounts over $3,000 in order to issue duplicate warrants to the payees. By 1995, this program was to include warrants outstanding more than two years in amounts over $2,000, and the Controller ultimately hopes to be able to identify warrants in amounts over $1,000. On the issue of security, Mr. Larrea noted the Controller electronically verifies warrants and thus a person with *all* the requested data could present a counterfeit warrant which could not be identified as such unless the real payee came forward. At present "there is little concern that the payee [of a lost warrant] is not being truthful," but if the public generally obtained *all* the requested data, false claims could increase.

Wayland Witten filed a counterdeclaration in support of disclosure. Until his retirement in 1987, he was John Henry's predecessor. He explained the concern expressed by the Controller regarding forgeries is irrelevant in the present context because forgeries are the result of *stolen* warrants. Moreover, false claims for "lost" warrants would not be a problem so long as the Controller demanded appropriate verification of identification. Thus, he averred the only true security concern is with counterfeited warrants. He pointed out that if one accepted the security arguments made by the Controller, then her own locator program could be a breach because unscrupulous employees with sufficient information to search for outstanding warrants could pass these data to outsiders equally capable of counterfeiting. He therefore assumed (since the locator program began after his retirement) that the only way in which the Controller could insure against internal fraud would be to provide the employees in charge of the program with sufficient data to locate the warrants but not to duplicate them. He was also "puzzled" by Mr. Larrea's claim the Controller would be forced to compile data from several files, because during his tenure the outstanding-warrant file contained all the requested data. Thus, he did not believe it would be any more burdensome or a greater security risk to make available a similar degree of information to the general public. In the alternative, the court could require

the use of an editor program to delete one or more of the requested fields of data, so that the codes which appear on the warrant itself could still detect counterfeited warrants electronically.[9] This editor program could also automatically delete warrants from the file which were payable to individuals (forestalling the Controller's claim this would require manual manipulation of data). He further noted the Controller's unclaimed property division currently provides data similar to that requested in the petition at $600 per microfiche, with sufficient data deleted as a protection against false claims.

In a supplementary declaration, Mr. Larrea stated the security of the locator program had been certified by the Controller's internal audits division. Moreover, employees who researched outstanding warrants were not authorized to issue duplicate warrants.

As the superior court asserted at one hearing, it could not imagine "a much more public thing than these warrants." In its view, "We may not personally as individuals care who are the payees on unpaid warrants. But we have an interest fundamentally in the idea that our public business is public. And what could be more public than the payment of public taxpayer money to somebody, right? What's more public than that, as to who gets our tax dollars?" It did not accept the Controller's argument that nondisclosure would prevent fraud. "I mean, anyone, a counterfeiter of a state warrant doesn't have to have additional data to counterfeit. He can just go counterfeit one today. Makes up a number, . . . [names] Chevron Oil Company, and goes down to the Bank of America and convinces the bank that he is a due representative of the Chevron Oil Company." The court concluded that if the Controller provided only the payee, date, and amount of outstanding warrants, "some counterfeiter is going to have to hit an eight[-]digit [warrant] number. That's a heck of a shot." It also rejected the claim disclosure would result in undue burden, particularly if the writ required the requesting party to provide a computer program at its own expense to find the data outlined by the court. However, it gave the Controller the opportunity to return with additional evidence of burden.

The Controller did not submit any additional evidence of undue burden. In its response to a proposed form of the judgment, the Controller specifically objected to the failure to include a requirement that the requesting party provide a computer program "necessary to enable the Controller's staff to retrieve the information . . . ."

Ultimately, the superior court signed a judgment prepared by the Controller. In pertinent part, it provides,

---

[9]The Controller encodes warrants with several fields of numerical data to allow electronic verification. For obvious reasons, the Controller has alluded to this system only generally, and we will not insist on greater detail.

"In support of a motion to compel discovery, [InterSource] acknowledges that the information it seeks is related to warrants issued to state vendors. . . .

"Following extensive briefing in [*Argent*], this Court ordered disclosure of certain information regarding State Controller vendor warrants and, because the issue herein is the same, now makes the same ruling in this case . . .

"1. The Petition for Writ of Mandate . . . is GRANTED.

"2. [The Controller] is directed to produce to [InterSource] information relating to warrants that were drawn or issued by the [Controller] in favor of companies and corporate vendors that provided goods and/or services to the State, but which have not been cashed or paid . . . . The information to be produced is as follows:

"a. the date of each outstanding warrant;

"b. the amount of each outstanding warrant; and

"c. the name of the payee of each outstanding warrant.

"3. [InterSource] is to provide to the [Controller] a computer program which will enable that Office to retrieve the information ordered disclosed herein.

"4. The information to be disclosed shall relate to all outstanding warrants *beginning with the date six months prior to the date the computer program provided by [InterSource] is functional and going back in time to the date the outstanding warrants become void*." The Controller filed the present petition in December 1995, which has awaited the resolution of her petition in *Argent*.

DISCUSSION

I

■ As a threshold consideration, we consider the claim by the Controller that InterSource is not within the "purview" of the Act. She relies on the last three words of the codified declaration of policy appearing at the outset of the Act, which provides, "In enacting this chapter, the Legislature . . . finds and declares that access to information concerning the conduct of the people's business is a fundamental . . . right of every person *in this state*." (§ 6250, italics added.) She also cites two decisions which describe the public's access to government records as "a fundamental right of *citizenship*." (*Rogers* v. *Superior Court* (1993) 19 Cal.App.4th 469, 475 [23

Cal.Rptr.2d 412], italics added; accord, *CBS, Inc.* v. *Block* (1986) 42 Cal.3d 646, 651, fn. 5 [230 Cal.Rptr. 362, 725 P.2d 470].) Asserting InterSource is a citizen of Oklahoma because it is incorporated there,[10] the Controller argues the Legislature could not have intended for California public agencies to be accountable to citizens of another state.[11]

First of all, the cases cited by the Controller are inapposite, as neither adjudicated the right of non-Californians to enforce the Act. Cases are not propositions for matters not expressly considered. (*Honey Baked Hams, Inc.* v. *Dickens* (1995) 37 Cal.App.4th 421, 428 [43 Cal.Rptr.2d 595].) Therefore, the choice of terminology in the two decisions is immaterial.

Moreover, the legislative intent evinced by the Act is directly contrary to that inferred by the Controller. Section 6250 originally concluded with the phrase "every citizen of this state." (See Stats. 1968, ch. 1473, § 39, p. 2946.) In 1970, the Legislature amended section 6250 to its present form, "every person in this state." We presume the Legislature is aware of the distinction between "citizen" (defined in section 241 as all persons either born in California and residing within it, or citizens of the United States residing in California) and the more inclusive "person" (defined in section 17 as "any person [or] . . . corporation . . ."). Nor did the Legislature limit the Act's definition of "person" to domestic corporations. (§ 6252, subd. (c) [" 'Person' includes any . . . corporation . . ."].) As the Corporations Code demonstrates, the Legislature is capable of expressing the distinction in usage between domestic and foreign corporations. (Corp. Code, §§ 167, 171.)

This lack of limitation on those who may enforce the Act is by no means an inadvertent effect of ill-considered language employed by the Legislature. "Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*CBS, Inc.* v. *Block, supra*, 42 Cal.3d at p. 651.) It thus furthers the purpose of the Act to have the records of our public agencies and officials always and everywhere available on request (except where exempt). Thus, when section 6253 declares *every* person has a right to inspect any public record, when

---

[10]For this proposition, she cites *Neirbo Co.* v. *Bethlehem Corp.* (1939) 308 U.S. 165, 169 [60 S.Ct. 153, 155, 84 L.Ed. 167, 128 A.L.R. 1437], which states "a corporation . . . [has] citizenship in the chartering state for [federal court] jurisdictional purposes." We have no occasion to consider whether this rule of federal jurisdiction has application in the context of the Act or other California statutes.

[11]The Controller's alternative purview argument—that disclosure of this information does not further the purpose of the Act—echoes her contentions regarding the absence of any public interest in disclosure. We will treat them in connection with that topic.

section 6257 commands state and local agencies to make records promptly available to *any* person on request, and when section 6258 expressly states *any* person may institute proceedings to enforce the right of inspection, they mean what they say. We therefore reject the Controller's argument to the contrary.

## II

■ We thus come to whether, under section 6255, the Controller satisfied her burden of demonstrating a public interest in nondisclosure that clearly outweighs the public interest in disclosure on the facts of this particular case. (*Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at p. 1339; *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 780 [192 Cal.Rptr. 415].) This is a matter on which we exercise de novo review, according the usual deference to any express or implied factual findings of the superior court supported by substantial evidence. (*Times Mirror Co., supra,* 53 Cal.3d at p. 1336.)

## A

The Controller posits three interests of the public in nondisclosure. We consider them in turn.

1. ■ The Controller suggests the public interest in nondisclosure may be based on purely *speculative* security concerns. However, her authority does not support so broad a proposition.

A court may indeed consider *potential* threats; for example, the Supreme Court acknowledged a public interest in nondisclosure of then Governor Deukmejian's appointment schedules and calendars because of "the potential threat to the Governor's physical security." (*Times Mirror Co.* v. *Superior Court, supra,* 53 Cal.3d at p. 1346.) However, the court was not accepting mere speculation. The court based its holding on what it termed the "reasonable" assertion in a declaration of the Governor's security director identifying a specific threat that the requested information would disclose " 'with relative precision when and where the Governor may be found, those persons who will be with him, and when he will be alone.' " (*Id.* at pp. 1331, 1346.) On the other hand, the Controller's declarations never make any particularized connection between the *limited* fields of data subject to disclosure under the superior court's judgment and the way in which this disclosure could increase the risk of counterfeiting. The Controller also cites discussion in *ACLU, supra,* 32 Cal.3d at page 451, of hypothetical malefactors misusing information obtained under the Act. However, *ACLU* merely noted (in the course of statutory interpretation of a specific exemption) that a court should bear in mind that information subject to disclosure was available to *anyone* who requests it. (Accord, *Los Angeles Police Dept.* v.

*Superior Court* (1977) 65 Cal.App.3d 661, 668 [135 Cal.Rptr. 575].) This was not part of any weighing process under section 6255 which is, by legislative directive, to be based on the *facts* of a particular case.

Moreover, existing authority explicitly rejects the Controller's suggestion. "A mere assertion of possible endangerment does not 'clearly outweigh' the public interest in access to these records." (*CBS, Inc.* v. *Block, supra,* 42 Cal.3d at p. 652; accord, *New York Times Co.* v. *Superior Court* (1990) 218 Cal.App.3d 1579, 1585 [268 Cal.Rptr. 21].) We thus confine ourselves to security concerns supported by the record.

The Controller continues to argue in this court that disclosure will create the potential for presentation of false claims, citing the Henry and Larrea declarations. However, the Witten declaration maintained that false claims can be prevented by requiring appropriate verification of the payee's identity. The Controller did not challenge this opinion on its merits (beyond highlighting the fact Mr. Witten was no longer a member of her office). Since we must resolve all factual disputes in favor of the judgment, in this conflict between declarations we must credit Wayland Witten's. (*Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 699 [321 P.2d 749]; *Mag-necomp Corp.* v. *Athene Co.* (1989) 209 Cal.App.3d 526, 533 [257 Cal.Rptr. 278].) Thus, the Controller has not established a potential for increased false claims.

As earlier recounted, the Witten declaration also maintained that the Controller's anecdotal evidence regarding forged warrants was inapposite because forged warrants can arise only in connection with stolen authorized warrants. The Controller has apparently conceded the point in this court, as she does not cite this evidence. In any event, the Witten declaration is again a basis for concluding the Controller failed to establish facts supporting this concern.

This leaves the concern with counterfeiting, a potential threat which InterSource does not dispute. However, as noted above, the superior court stated at the hearing that nothing at present prevents a counterfeiter from negotiating a phony warrant. The Controller has presented nothing other than speculation in her supporting declarations that the incidence of counterfeiting will increase if she provides the requested information. This is insufficient. (*CBS, Inc.* v. *Block, supra,* 42 Cal.3d at p. 652; *New York Times Co.* v. *Superior Court, supra,* 218 Cal.App.3d at p. 1585.) But even if we credit these speculations as expert opinion, the Controller never challenged the superior court's conclusion at the hearing that its proposed limitations on the data disclosed to InterSource would make it extremely difficult to create an exact counterfeit of an existing outstanding warrant. Instead, the Controller reiterates in this court the concerns expressed in her own declarations about

release of the *full panoply* of data *originally* requested in the writ of mandate. Yet again, the Witten declaration provides an adequate basis for the superior court's conclusion that its *limited* disclosure order eliminated the Controller's legitimate security concern.

2. ■ Among the Act's specific exemptions from disclosure are "Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures" of the state and local law enforcement agencies (subject to extensive provisos). (§ 6254, subd. (f).) Acknowledging her records do not come literally within this provision, the Controller argues the outstanding warrants are "akin" to the files which are the subject of this provision because there are "security" concerns. She cites *Eskaton Monterey Hospital* v. *Myers* (1982) 134 Cal.App.3d 788, 792-793 [184 Cal.Rptr. 840], where we held there is a compelling public interest in the nondisclosure of investigative records to prevent potential violators of the law from escaping detection. While our analysis involved section 6255, we identified a public interest in nondisclosure by analogy to an exception for investigatory records contained in the parallel federal Freedom of Information Act (FOIA). Thus, we agreed a hospital could not have access to a manual which described the "game plan" for audits of Medi-Cal programs, because unscrupulous health care providers could manipulate records of expenditures to avoid triggering audits. (134 Cal.App.3d at pp. 793-794.)[12]

InterSource incorporates the opposition in *Argent*, which cites numerous cases purportedly establishing the narrow contours of the Act's express investigatory-records exception.[13] But this is beside the point. As noted, the Controller is not relying on the express investigatory-records exception, but is instead merely citing it as analogous support for its security argument. As we have already determined that the superior court could resolve the factual dispute regarding the Controller's security concerns in favor of disclosure, it adds nothing to the analysis to frame it in terms of a specific exemption in the Act.

3. ■ This leaves the claim the undue inconvenience and expense in providing the requested information weighs in favor of nondisclosure. (*ACLU, supra,* 32 Cal.3d at pp. 452-453.)

---

[12]The Controller also cites *Procunier* v. *Superior Court* (1973) 35 Cal.App.3d 211 [110 Cal.Rptr. 531], a summary opinion which concludes an inmate defendant is not entitled to prison blueprints or lists of gang-affiliated prisoners in response to a discovery request because this would endanger the security of the prison system and the safety of the citizens of the state. However, the terseness of the opinion makes it difficult to apply the holding outside its factual context.

[13]Although *Williams* v. *Superior Court* (1993) 5 Cal.4th 337 [19 Cal.Rptr.2d 882, 852 P.2d 377] calls a number of earlier cases into question because it rejects reliance on FOIA precedent in interpreting the reach of this exception (*id.* at p. 354), it nonetheless affirms the qualification that a record comes within the exception only if there was a concrete prospect of its use for law enforcement purposes at the time of its creation. (*Id.* at pp. 356, 362.) Obviously, an outstanding-warrant file would not satisfy this criterion.

In an abbreviated argument, the Controller reiterates the contentions she made in the superior court. Pointing to the daily fluctuations in the file caused by newly issued and newly canceled warrants, she asserts she could be subjected to daily demands by numerous asset-finders. She also argues the data ordered disclosed by the judgment are not contained in a single file (forcing her employees to cull several files to obtain the information) and would require manual editing to remove the names of individual payees. She again asserts disclosure would overtax her personnel resources.

We first consider the contention there is not an existing file. Unlike *Argent*, where the Controller's failure to submit evidence in support of this contention was determinative, here we have an admission by InterSource in exhibits to its petition in the superior court that the names of payees appear only in the microfiched "warrant register" of copies of all issued warrants, while the date and amount are contained in the outstanding-warrant file (along with the warrant number that is not itself subject to disclosure). While this new information gives a better picture of the process, it does not change the facts that the Controller has admitted her own locator program searches for names, dates, and amounts (over $2,000 and someday over $1,000), which is substantial evidence supporting the superior court's implied conclusion there is an existing record containing the three data specified in the judgment.[14]

Turning to the Controller's remaining contentions, this court has previously held that an agency may be forced to bear a tangible burden in complying with the Act absent legislative direction to the contrary. (*State Bd. of Equalization* v. *Superior Court* (1992) 10 Cal.App.4th 1177, 1190, fn. 14 [13 Cal.Rptr.2d 342]; *Northern Cal. Police Practices Project* v. *Craig* (1979) 90 Cal.App.3d 116, 124 [153 Cal.Rptr. 173].) In response to concerns about the burden on the Controller, the superior court did not include individual payees, limited its judgment to a date certain (eliminating the spectre of multiple requests by InterSource), and required InterSource to prepare an editor program to delete the data to which InterSource is not entitled.[15] Witten's declaration is substantial evidence supporting the superior court's implicit finding that these modifications eliminated any undue

---

[14]Although InterSource sought disclosure only of warrants over $3,000, the present judgment contains no such restriction. To forestall any argument by the Controller that searching for warrants under $3,000 is work not contained in any existing record, and because it is peremptory relief in excess of that requested in InterSource's original petition in the superior court, we shall direct the appropriate modification of the judgment.

[15]The Controller complains the judgment's provision for an editor program will compel her "to open files to [InterSource] which are not open even to the majority of [her] employees" and "reveal how [her] computer records are kept." In the first place, since this provision was added to the judgment at the Controller's insistence, the doctrine of invited error precludes her from raising any argument based upon it. Further, the judgment does not require

burden (particularly the averment the Controller's unclaimed property division presently provides similarly redacted information). Despite the invitation of the superior court, the Controller never offered any evidence the *modified* disclosure would not alleviate the Controller's *original* objections. "[W]e are given no reason to reject the trial court's [implicit] finding that the burden is sufficiently alleviated . . . ." (*State Bd. of Equalization, supra,* 10 Cal.App.4th at p. 1190.) As for the Controller's hypothecated multiple requests by *other* asset-locators, our focus under section 6255 are the facts of the *present* case. We leave to future litigation the determination whether the functioning of her office will be overwhelmed by other asset-finders operating under similar restrictions.

## B

■ We have determined the Controller has demonstrated on the facts of this case no more than a slight public interest in the nondisclosure of the data included in the superior court's judgment. On the other side of the balance, the Controller argues there is no public interest in disclosure of these records, so even a slight interest in nondisclosure should be determinative.

In the Controller's view, she exercises no discretion in issuing warrants to pay bills and there has not been any claim she has failed to pay bills, so she believes there is no public interest in holding her accountable for this ministerial task. While she concedes the purpose for which a request is made under the act is "generally" irrelevant, the Controller also claims no court has ordered disclosure solely for commercial purposes. Finally, the Controller asserts the existence of her own locator program for identifying and paying outstanding warrants expunges any public interest in outstanding warrants.

As we have previously held, "If the records sought pertain to the conduct of the people's business there *is* a public interest in disclosure. The *weight* of that interest is proportionate to the gravity of the governmental tasks sought to be illuminated and the directness with which the disclosure will serve to illuminate." (*Citizens for a Better Environment* v. *Department of Food & Agriculture* (1985) 171 Cal.App.3d 704, 715 [217 Cal.Rptr. 504], italics added.) The existence and weight of this public interest are conclusions derived from the nature of the information. (*Ibid.*) The purpose for which the requested records are to be used is not just "generally" irrelevant; we have specifically held, "What is material is the *public* interest in disclosure, not

---

InterSource itself be given direct access to the Controller's database. All that need be provided to InterSource is sufficient information to allow it to create a compatible program which will be run by the "few employees" who have access to the file. Finally, the Controller has not provided any *facts* to support this claim of an alleged breach of security flowing from *this provision.*

the private interest of a requesting party; section 6255 does not take into consideration the requesting party's profit motives or needs." (*State Bd. of Equalization* v. *Superior Court, supra,* 10 Cal.App.4th at p. 1191.) Thus, the fact a requesting party is a commercial entity using the information for strictly commercial purposes does not diminish the public interest inherent in the material requested. (*Id.* at pp. 1190-1191.)

As the superior court correctly concluded, the records pertain to the government's conduct in managing public revenues. The Controller may depict her office's part in the allocation of revenues to be drab and ministerial, but bill-paying is no less essential to the proper workings of state government than legislating (or, dare we say, adjudicating), thus there is a public interest of sufficient gravity. While the Controller may assert the public has no interest in these records because she is performing her task properly and is herself seeking out unpaid vendors to ensure they receive compensation for goods and services, this is akin to asking that we allow her "to exercise absolute discretion, shielded from public accountability" in the operations of her office. (*New York Times Co.* v. *Superior Court, supra,* 218 Cal.App.3d at p. 1585.) However, the public interest demands the ability to verify. Only in this way can the public be certain, for example, that there is not a conspiracy of silence about outstanding warrants so that the payees are lulled into inaction until the warrants are canceled.[16]

Since there is a strong public interest in disclosure, the balance must tip in favor of access to the outstanding warrant file. We shall therefore deny the Controller's petition.

### DISPOSITION

The alternative writ is discharged. The petition for an extraordinary writ is granted only to the extent of directing the trial court to modify its judgment to apply only to warrants over $3,000, and is otherwise denied. The stay previously issued by this court shall be dissolved as of the date this opinion is final. InterSource shall recover its costs.

Puglia, P. J., and Blease, J., concurred.

---

[16]We hasten to add that identifying a possible misfeasance is in no way intended to impugn the operations of the Controller's office (much as the Controller asserts her posited concern with dishonesty is not intended to impugn InterSource's reputation).