Filed 5/26/15  inewsource v. Super. Ct. Ca4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| INEWSOURCE,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>Respondent;<br><br>NORTH COUNTY TRANSIT DISTRICT,<br><br>Real Party in Interest. | D067118<br><br>(San Diego County Super. Ct. No. 37-2014-00007070-CU-WM-CTL) |

ORIGINAL PROCEEDINGS in mandate.  Joan M. Lewis, Judge.  Petition granted in part and denied in part; request for judicial notice granted in part and denied in part.

Sheppard, Mullin, Richter & Hampton and Guylyn R. Cummins for Petitioner.

No appearance for Respondent.

McDougal, Love, Eckis, Boehmer & Foley, Steven E. Boehmer and M. Anne Gregory for Real Party in Interest.

Petitioner inewsource seeks disclosure of documents from real party in interest North County Transit District (the District) under the California Public Records Act (PRA).  (Gov. Code, § 6250 et seq.)[1]  The documents at issue reflect the results of a "Leadership Assessment Program" conducted at the District's expense by the Rady School of Management at the University of California at San Diego.  In response to inewsource's PRA request, the District declined to provide the documents on the grounds they were exempt from disclosure.  The trial court agreed and denied inewsource's petition for writ of mandate compelling disclosure.

Inewsource petitions this court for a writ of mandate directing the trial court to vacate its order, grant the petition, and compel disclosure.  Inewsource contends the exemptions cited by the trial court, for personnel files (§ 6254, subd. (c)) and the PRA's "catch-all" provision (§ 6255, subd. (a)), are inapplicable.  We agree in part, and therefore grant the petition in part, as we will explain.

FACTUAL AND PROCEDURAL BACKGROUND

Inewsource is a nonprofit organization based in San Diego, California, and engaged in investigative journalism.  Inewsource publishes its content on the Internet and through its partnership with KPBS, a local public radio and television station.  Among inewsource's subjects have been the management, operations, and finances of the District.

---

[1]  Further statutory references are to the Government Code unless otherwise specified.

Inewsource has published dozens of articles, Internet posts, and other items about the District.

Created by the California Legislature in 1975, the District is a public entity that develops and operates mass transit services in the northern portion of San Diego County. These services include the COASTER commuter rail, the SPRINTER light rail, the BREEZE fixed-route bus system, the FLEX on-demand system, and the LIFT paratransit service. The District is supervised by a nine-member board of directors consisting of elected officials from eight cities in its service area and from San Diego County.

In December 2013, 13 District senior management staff participated in a "Leadership Assessment Program" (Program) at the Rady School of Management at the University of California at San Diego. The participants attended the Program at the District's expense. The scope of work for the Program described it in part as follows: "A structured leadership assessment experience offers an opportunity to demonstrate skills and capabilities in a challenging environment and to receive feedback on that performance. . . . [¶] . . . [¶] . . . By providing specific, actionable evaluations and feedback, developmental activities can be targeted to skills that will make the greatest difference in the success of both the individual and the organization."

The scope of work touts benefits of the Program for both the participating individuals and their organization. For individuals, the Program provides "a foundation for development planning," including (1) "[c]omprehensive, integrated feedback" from the Program, (2) "[a] summary of results and recommendations for ongoing development," and (3) "[a] comprehensive 360-degree feedback summary of how others

3

perceive the participant's skills and abilities."  For the organization, the Program provides

"a solid foundation for individual development and succession planning efforts" through

(1) "[a] report on each participant detailing their strengths and development needs," (2)

"[a]n evaluation of each participant on each of the organization's key competencies," and

(3) "[a] talent management summary that shows where leadership strengths and

development needs are greatest within a team of participants."[2]

The latter three items appear to comprise the documents at issue in this proceeding

(hereinafter, the Rady documents).  The participant reports are tailored to each individual

and provide specific, personalized written feedback and evaluations along each of the

categories (or "competencies") assessed.  These categories include general managerial

skill sets and more practical organizational competencies.  The participant evaluation

contains a table that provides a single rating in each category for each participant, along

with the participant's name.  (The participant evaluation is the first page of the Rady

documents as submitted to this court.)  The talent management summary contains a table

that lists only the categories, not the participants, and shows how the organization as a

whole fared in each category.  Although the talent management summary is composed of

the ratings of the individual participants, the ratings are reordered within each category

such that an individual participant's ratings across each category cannot be reconstructed

from the summary.  No participant names are listed in the talent management summary.

---

[2]     The scope of work also notes that the Program achieves "[a] balance between
business acumen and leadership characteristics, competencies and attributes."

(The talent management summary is the second page of the Rady documents as submitted to this court.)[3]

The District's human resources manager, Karen Tucholski, told participants that the results of the Program would be confidential. Tucholski said the results "were for professional development purposes only and would be part of each employee's personnel file accessible only by authorized [District] personnel such as Human Resources or the employee's supervisor."

A year later, Brad Racino, an investigative reporter for inewsource, received information that District employees had participated in the Program. He filed a PRA request for "[a]ny and all studies or reports compiled by the Rady School of Management concerning [the District] in electronic format." Two days later, the District denied Racino's request on the grounds the requested documents were exempt as personnel files under section 6254, subdivision (c).

Inewsource filed a petition for writ of mandate in the trial court seeking an order compelling disclosure of the Rady documents and other relief. The District opposed. In addition to the personnel records exemption, the District argued the Rady documents were exempt from disclosure under the PRA's "catch-all" exemption in section 6255, subdivision (a).

---

[3] Even if the documents described in the scope of work do not correspond exactly to the Rady documents at issue here, we find the names used in the scope of work useful and will use them to refer to the Rady documents that have been submitted to us as we have described them.

5

After examining the Rady documents *in camera*, the trial court denied inewsource's petition. The court found that both exemptions urged by the District applied: "Having reviewed the records, the Court first finds that the Rady documents are 'personnel, medical, or similar files, . . .' Accordingly, the Court balances the privacy interests of the parties subject [to] these documents against the public interest in disclosure. The Court finds the balance weighs in favor of non-disclosure. Here, the records would not contribute to the public's understanding of government and would not shed light on what 'the government has been up to.' [¶] The Rady documents are not documents reflecting how [the District] conducts its business. Rather, the records represent an assessment of the individual's strengths and weaknesses in various tested areas and any recommendations relative thereto. Having reviewed these records, the Court finds them to be akin to performance evaluations and any public interest in the records would be minimal at best. [¶] . . . [¶] The Court further finds that the public interest in disclosure of these documents is outweighed by the public interest in nondisclosure. [(§ 6255, subd. (a).)] Assuming a public interest exists, the Court finds that . . . disclosure of these documents would have [a] detrimental effect on the management employees at [the District] by creating unhealthy comparisons and potential embarrassment between management employees and their subordinate employees."

Inewsource petitioned this court for a writ of mandate directing the superior court to vacate its order, grant the petition, and compel disclosure of the Rady documents. We requested and received a sealed copy of the documents at issue, which we have reviewed. We issued an order to show cause and will now grant the petition in part.

6

DISCUSSION

I

As an initial matter, we must consider inewsource's request for judicial notice, which includes requests inewsource made to the trial court (but for which the trial court issued no ruling) and requests to this court in the first instance.[4]  Evidence Code section 459, governing requests for judicial notice in this court, provides in part as follows:  "The reviewing court shall take judicial notice of:  (1) each matter properly noticed by the trial court; and (2) each matter that the trial court was required to notice under [Evidence Code] Section 451 or 453.  The reviewing court may take judicial notice of any matter specified in [Evidence Code] Section 452."  (Evid. Code, § 459, subd. (a); see *Lockley v. Law Office of Cantrell, Green, Pekich, Cruz & McCort* (2001) 91 Cal.App.4th 875, 881.)  If a matter is properly subject to judicial notice, "[e]xclusionary rules of evidence do not apply except for [Evidence Code] Section 352 and the rules of privilege."  (Evid. Code, § 454, subd. (b)(2).)

Inewsource's first request for judicial notice in the trial court covered four news articles published by inewsource (and in some cases KPBS as well) concerning alleged incompetence and malfeasance at the District and one memorandum issued by the California Department of Industrial Relations discussing regulatory requirements related to personnel records.  The fact that news articles have been published may be judicially

4    Prior to the issuance of our order to show cause in this matter, inewsource submitted an application for judicial notice.  Because inewsource's motion for judicial notice supersedes the application, we deny the application as moot.

7

noticed under Evidence Code section 452, subdivisions (g) and (h). (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 193 (*Ragland*).) However, a court may not take judicial notice of the truth of the matters stated therein. (*Id.* at pp. 193-194.) Similarly, official government records may be judicially noticed under Evidence Code section 452, subdivision (c), but the truth of the matters stated therein may not. (*Ragland, supra*, 209 Cal.App.4th at p. 193 ["Although the audit report is a government document, we may not judicially notice the truth of its contents."].) We further find that these matters have at least some relevance to the issues before the court. Upon the proper request of a party, the trial court was required to judicially notice the existence of the news articles and the state memorandum. (Evid. Code, § 453.) We are therefore required to do so as well. (Evid. Code, § 459, subd. (a).)

Inewsource's second request for judicial notice in the trial court covered more than 30 documents. The existence of the news stories and Internet Web pages referenced in the request will be judicially noticed for the reasons we have already stated.[5] (Evid. Code, §§ 452, subds. (g) & (h); 453, 459, subd. (a); see *Ragland, supra*, 209 Cal.App.4th at p. 193.) Similarly, the existence of the District correspondence, District e-mails, the District's annual report, a third-party audit commissioned by the District, and other District documents referenced in the request will be judicially noticed. (Evid. Code,

---

5    We will not take judicial notice of the Wikipedia page entitled "No bid contract" on the grounds the trial court was not required to judicially notice it because it had no relevance to the disposition of inewsource's petition. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1326 [" 'Although a court may judicially notice a variety of matters [citation], only *relevant* material may be noticed.' "].)

8

§§ 452, subds. (c), (g) & (h); 453, 459, subd. (a); see *Landstar Global Logistics, Inc. v. Robinson & Robinson, Inc*. (2013) 216 Cal.App.4th 378, 388, fn. 4; *Ragland, supra*, 209 Cal.App.4th at p. 193.)  The referenced portions of the Public Contract Code, sections 100 through 102, are subject to mandatory judicial notice.  (Evid. Code, §§ 451, subd. (a); 459, subd. (a).)  Again, we find that these matters have at least some relevance to the issues before the court.  We will not take judicial notice of the existence or contents of the inewsource correspondence referenced in the request because they are not judicially noticeable as a fact or proposition in common knowledge or not reasonably subject to dispute.  (See Evid. Code, § 452, subds. (g) & (h).)  We also will not take judicial notice of District documents and correspondence filed in inewsource's exhibit appendix to its trial court writ petition.  Those documents are already part of the record before this court, and judicial notice is unnecessary.  Any objections made in the trial court have not been adequately urged on appeal and supported by reasoned argument and authority.  They are therefore waived.  (See *Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956.)

Inewsource's request for judicial notice in this court covers the District's business case justification for the Program, other District documents and correspondence, an Internet Web page published by the California Department of Human Resources, two California Regional Water Quality Board orders, portions of a Federal Transit Administration review of the District, and various inewsource news articles and Internet Web pages.  Inewsource contends judicial notice of these documents is warranted under Evidence Code section 452.  Inewsource did not seek judicial notice of these documents

in the trial court, claiming without explanation that "page constraints" prevented it from doing so.  To the extent these documents are already part of the record, e.g., in inewsource's exhibit appendix, judicial notice is unnecessary as we have explained.  As to documents not already part of the record, we decline to take judicial notice of these documents in these proceedings because inewsource did not request judicial notice in the trial court.  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Safeco Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 834, fn. 14.)

II

We now turn to the merits of inewsource's petition.  "The PRA and the California Constitution provide the public with a right of access to government information.  As [the Supreme Court] has explained:  'Openness in government is essential to the functioning of a democracy.  "Implicit in the democratic process is the notion that government should be accountable for its actions.  In order to verify accountability, individuals must have access to government files.  Such access permits checks against the arbitrary exercise of official power and secrecy in the political process."  [Citation.]'  [Citation.]  In adopting the PRA, the Legislature declared that 'access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' (§ 6250.)  'As the result of an initiative adopted by the voters in 2004, this principle is now enshrined in the state Constitution . . . .'  [Citation.]  The California Constitution, article I, section 3, subdivision (b)(1) provides:  'The people have the right of access to information concerning the conduct of the people's business, and therefore, the meetings

10

of public bodies and the writings of public officials and agencies shall be open to public scrutiny.' " (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 164.)

The PRA "was passed for the explicit purpose of 'increasing freedom of information' by giving the public 'access to information in possession of public agencies' [citation]. Maximum disclosure of the conduct of governmental operations was to be promoted by the [PRA]." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651-652.) "In general . . . all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 238 (*LAUSD*).)

"The Legislature has been 'mindful of the right of individuals to privacy.' (§ 6250.) Set forth in the [PRA] are numerous exceptions to the requirement of public disclosure, many of which are designed to protect individual privacy. (See § 6254.) In addition, a catchall exception applies if 'on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.' (§ 6255, subd. (a).) Unless one of the exceptions stated in the [PRA] applies, the public is entitled to access to 'any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency.' (§ 6252, subd. (e); see § 6253, subd. (a).)" (*International Federation of Professional & Technical Engineers, Local 21, AFL–CIO v. Superior Court* (2007) 42 Cal.4th 319, 329 (*International Federation*), fn. omitted.)

"In 2004, California's voters passed an initiative measure that added to the state Constitution a provision directing the courts to broadly construe statutes that grant public

11

access to government information and to narrowly construe statutes that limit such access. (Cal. Const. art. I, § 3, subd. (b)(2).) That provision, however, does not affect the construction of any statute 'to the extent . . . it protects [the] right to privacy . . . .' (Cal. Const. art. I, § 3, subd. (b)(3).)" (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 68.)

"Interpretation of the [PRA] and its application to undisputed facts present questions of law subject to de novo appellate review. [Citation.] And when it comes to balancing various interests under the [PRA], while we accept the trial court's express and implied factual determinations if supported by the record, 'we undertake the weighing process anew." (*LAUSD, supra*, 228 Cal.App.4th at p. 237.) "An agency opposing disclosure bears the burden of proving that an exemption applies." (*Id.* at p. 239.)

III

The District first asserts that the Rady documents are part of the participants' personnel files and are therefore exempt under section 6254, subdivision (c).[6] That statute exempts from disclosure "[p]ersonnel, medical, or similar files, the disclosure of

---

[6] The District also makes the following threshold argument: "[The District] has always maintained that the Rady documents are not public records[;] they are private personnel records and exempt from disclosure under Government Code section 6254 subdivision (c)." The District appears to misunderstand the PRA. Personnel records exempt from disclosure *are* public records; otherwise they would need no exemption. (§§ 6252, subd. (e); 6254.) In any event, the District offers no reasoned argument or authority for the proposition that the Rady documents are not public records. Based on our review, we conclude they are public records within the meaning of the PRA. (§ 6252; see *San Gabriel Tribune v. Superior Court* (1983) 143 Cal.App.3d 762, 774 (*San Gabriel Tribune*).)

which would constitute an unwarranted invasion of personal privacy." (§ 6254, subd. (c).)

Relying on analogous federal law under the Freedom of Information Act (FOIA), this court has applied a three-step analysis to evaluate an argument based on this exemption: "As a threshold matter, the court must determine whether the records sought constitute a personnel file, a medical file, or other similar file. If so, the court must determine whether disclosure of the information would 'compromise substantial privacy interests; if privacy interests in given information are *de minimus* disclosure would not amount to a "clearly unwarranted invasion of personal privacy" [citation], in light of FOIA's broad policy favoring disclosure.' [Citation.] Lastly, the court must determine whether the potential harm to privacy interests from disclosure outweighs the public interest in disclosure." (*Versaci v. Superior Court* (2005) 127 Cal.App.4th 805, 818 (*Versaci*); see *BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 755 (*BRV*).)[7]

To qualify as personnel or similar files, documents "need not contain intimate details or highly personal information. They may simply be government records containing 'information which applies to a particular individual.' " (*LAUSD, supra*, 228 Cal.App.4th at p. 239.) Two types of records in the Rady documents, the participant

---

[7]  Inewsource contends *Versaci* is not good law because it relies on analogous cases interpreting FOIA and it cites a case (*Teamsters Local 856 v. Priceless, LLC* (2003) 112 Cal.App.4th 1500), the conclusion of which the Supreme Court later disagreed with (see *International Federation, supra*, 42 Cal.4th at p. 336). We disagree. Cases interpreting FOIA can inform California courts' interpretation of the PRA in many contexts, even if the two statutory schemes differ in certain ways. (See *Williams v. Superior Court* (1993) 5 Cal.4th 337, 352.) *Versaci*'s citation to *Teamsters Local 856 v. Priceless, LLC* also does not undermine the analysis or conclusions in *Versaci* on which we rely.

13

reports and participant evaluations, appear to be personnel or similar files. They contain information specific to individual participants, and the competency evaluations in those records reflect information that is traditionally contained in personnel files (e.g., performance reviews). (See *ibid*.; *Versaci, supra*, 127 Cal.App.4th at p. 819; see also *Milner v. Department of Navy* (2011) 562 U.S. 562 [" '[T]he common and congressional meaning of . . . "personnel file" ' is the file 'showing, for example, where [an employee] was born, the names of his parents, where he has lived from time to time, his . . . school records, results of examinations, [and] evaluations of his work performance.' "].) The talent management summary presents a closer question. The information in that record reflects individual, albeit anonymous, information and evaluations. For purposes of our discussion, we will accept the District's contention that the talent management summary, too, is a personnel or similar file.

Next we evaluate the privacy interests implicated by the Rady documents. (*Versaci, supra*, 127 Cal.App.4th at p. 818.) "Public employees have a legally protected interest in their personnel files." (*BRV, supra*, 143 Cal.App.4th at p. 756.) The strength of that interest, however, will vary depending on the information at issue. Again, we find it useful to distinguish the participant reports and participant evaluation, on one hand, from the talent management summary, on the other.

The participant reports and participant evaluation reflect individualized assessments of each participant. In the participant reports, these assessments include written narratives describing the participant's personality traits, work ethic, and similar qualities. In the participant evaluation, the assessments are distilled into a rating for each

14

assessed category. Based on this content, we conclude that disclosure of the participant reports and participant evaluation in the Rady documents "would 'compromise substantial privacy interests.' " (*Versaci, supra*, 127 Cal.App.4th at p. 820 [disclosure of an employee's "personal performance goals"].) "[T]he 'disclosure of negative comments or information about an employee on these subjects . . . could be quite embarrassing and painful to the employee. While many of the comments and much of the information are favorable or neutral, [the relevant exemption] was designed to protect individuals from a wide range of embarrassing disclosures, not just the disclosure of derogatory information. Indeed, the disclosure of favorable information could place the employee in a very embarrassing position with other, possibly jealous, employees.' " (*Ibid.*)

The talent management summary presents no similar danger of embarrassment or pain to individual employees. While the talent management summary provides information about the participants as a whole (e.g., whether most participants performed well in a particular category), the information cannot be linked to any individual participant. Nor does the talent management summary disclose whether any individual participant did well in one category and worse in another category; the ratings within each category are reordered from best to worst. The privacy interest in such collective assessments, while perhaps not *de minimus*, is nonetheless severely attenuated.

Our final step is balancing the privacy interests implicated by the Rady documents against any public interest in their disclosure. We "must determine whether the potential harm to privacy interests from disclosure outweighs the public interest in disclosure." (*Versaci, supra*, 127 Cal.App.4th at p. 818.) Fundamentally, the strength of the public

15

interest depends on " 'the extent to which disclosure of the requested item of information will shed light on the public agency's performance of its duty.' " (*Id.* at p. 820.) "While, as a threshold matter, the records must pertain to the conduct of the people's business, ' "[t]he *weight* of that interest is proportionate to the gravity of the governmental tasks sought to be illuminated and the directness with which the disclosure will serve to illuminate." ' " (*LAUSD, supra*, 228 Cal.App.4th at p. 242; see *Connell v. Superior Court* (1997) 56 Cal.App.4th 601, 616.)

As an initial matter, we note that the Program—and therefore the Rady documents—were procured with District funds. The public therefore has an interest in knowing what was purchased with those funds, whether the Program was worth what the District spent, and whether the Program provided utility to the District. (See *International Federation, supra*, 42 Cal.4th at p. 333 [finding a "strong public interest in knowing how the government spends its money"].) The public also has an interest in knowing how the District identifies professional development opportunities and evaluates its senior staff, which were in part purposes of the Program. The Rady documents would plainly shed light on the District's activities in these ways.

The Rady documents also shed light on the District's ability to perform its primary duty: developing and operating mass transit systems in San Diego County. "[P]ublic access makes it possible for members of the public ' "to expose corruption, incompetence, inefficiency, prejudice, and favoritism." ' " (*International Federation, supra*, 42 Cal.4th at p. 333.) The Program was designed to assess the competence of the District's senior managers in various categories (including "the organization's key competencies ") and

16

identify development opportunities. The Rady documents reflect the results of that assessment, including whether the individual participants performed well on the Program's various measures of managerial competency. While the Program focused on the competence of individual managers, the District's ability to perform its duty depends on the abilities of the individuals within the District's organization to act competently. (See *BRV, supra*, 143 Cal.App.4th at p. 757 ["Without doubt, the public has a significant interest in the professional competence and conduct of a school district superintendent and high school principal."].) The Rady documents are therefore relevant to an important public interest.

Although the Rady documents are somewhat abstracted from the specific details of the participants' everyday work, as the District repeatedly points out, the Rady documents nonetheless provide valuable insight into the strengths and weaknesses of the participating managers in their senior roles at the District—and the strengths and weaknesses of the management team as a whole. Indeed, those are two of the main purposes of the Program as set out in its scope of work.[8]

_____

[8] Contrary to inewsource's contention, the Rady documents do not involve an inquiry into instances of District wrongdoing, well-founded or otherwise. Instead, as we have discussed, they represent the evaluation of the participating managers in various general categories of managerial competency. Although the Rady documents may have some relevance to inewsource's allegations of wrongdoing or malfeasance, because they relate generally to the ability of the participating mangers to perform in their positions, there is no heightened public interest based on that tenuous connection. The standard for disclosure articulated by *American Federation of State etc. Employees v. Regents of the University of California* (1978) 80 Cal.App.3d 913 is therefore inapplicable. "[That] case provides that where complaints of a public employee's wrongdoing and resulting disciplinary investigation reveal allegations of a substantial nature, as distinct from

17

The participant evaluation and talent management summary, by presenting the ratings of the participant group as a whole, bear most directly on the District's competence to perform its public duties. (See *LAUSD, supra*, 228 Cal.App.4th at p. 243 ["There can be little doubt that a public interest exists in 'teacher AGT scores' [i.e., teaching achievement metrics] as a whole."].) The additional information in the participant reports, however, is only indirectly relevant to the operations of the District. Much of the information in the participant reports is tailored to the individual traits and personalities of the participants. While the public has some interest in knowing and evaluating the traits and personalities of senior managers at a public agency, based on our review most of the information in the participant reports would be primarily useful only to the individual participants. The public's ability to understand more about the District based on this additional information would be low.

Balancing the public and private interests, we conclude that the participant reports and participant evaluation fall within the PRA's personnel records exception. (See § 6254, subd. (c).) These documents reflect the ratings and assessments of each participant, identified by name, which engenders a strong privacy interest in their nondisclosure. They are akin to performance evaluations, which implicate substantial

---

baseless or trivial, and there is reasonable cause to believe the complaint is well founded, public employee privacy must give way to the public's right to know." (*Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1046.) The circumstances here are readily distinguishable. (See *LAUSD, supra*, 228 Cal.App.4th at p. 253 ["That is a far cry from the instant case, where there is no specific incident to investigate, just the ongoing (albeit important) work of teachers doing their jobs."].)

privacy interests.[9]  As to these documents, the strong interest in protecting the privacy of the individual participants outweighs the public interest in uncovering potential incompetence.  (See *Versaci, supra*, 127 Cal.App.4th at p. 822 [holding that a public employee's "privacy interest in her entire evaluation process including her personal performance goals outweighs the public's minimal interest in the matter"].)

Inewsource points out that a public official generally has "a significantly reduced expectation of privacy in matters of his public employment."  (*BRV, supra*, 143 Cal.App.4th at p. 758.)  While that principle is correct as a general matter, there are specific instances in which a public official's privacy interests will outweigh the public interest in disclosure.  (See, e.g., *Versaci, supra*, 127 Cal.App.4th at p. 822.)   "[E]ven government employees have privacy rights and ' "on certain occasions, the public's right to disclosure must yield to the privacy rights of governmental agents." '  [Citation.] '[O]ne does not lose his right to privacy upon accepting public employment . . . .' " (*LAUSD, supra*, 228 Cal.App.4th at p. 241, fn. 13.)  Contrary to inewsource's claim, even records related to public business may be withheld under an applicable exemption; that is the purpose of the exemptions.  If a record is purely personal and unrelated to public

---

9     The Brown Act, for example, "expressly authorizes a public agency to meet in closed session regarding the consideration of 'the appointment, employment, evaluation of performance, discipline, or dismissal of a public employee.' (Gov. Code, § 54957, subd. (b)(1).)"  (*Versaci, supra*, 127 Cal.App.4th at p. 821; see *International Federation, supra*, 42 Cal.4th at pp. 333-334.)  "The 'underlying purposes of the "personnel exception" are to protect the employee from public embarrassment and to permit free and candid discussions of personnel matters by a local governmental body.' " (*Versaci, supra*, 127 Cal.App.4th at p. 821.)

business, it is not subject to the PRA at all.  (See § 6252, subd. (e); see also *San Gabriel Tribune, supra*, 143 Cal.App.3d at p. 774.)[10]

Inewsource proposes, as an alternative, that the names of the participating individuals be redacted from the Rady documents to mitigate any privacy concerns.  (See *CBS, Inc. v. Block, supra*, 42 Cal.3d at p. 653 ["The fact that parts of a requested document fall within the terms of an exemption does not justify withholding the entire document."].)  We disagree.  Given the specificity with which the participant reports and, to some extent, the participant evaluation discuss the competencies, traits, and personalities of the participating managers, there is a substantial risk that the participating managers could be identified and linked to their individual ratings and reports.  Redacting the names of the individual managers would therefore have little effect on the privacy rights implicated by these documents.

---

[10]     Inewsource also relies on an opinion of the Attorney General concerning the disclosure of application and personnel files of nautical pilots.  (53 Ops.Cal.Atty.Gen. 136 (1970).)  In that opinion the Attorney General noted, as we do here, that portions of a personnel file may be sufficiently confidential to warrant exemption under the PRA:  "As the information bears more remotely on the question of qualifications or performance, and as it by its personal nature becomes more likely to be regarded as intrusive or embarrassing by its disclosure, the probability of its confidential nature increases."  (53 Ops.Cal.Atty.Gen, *supra,* at pp. 146-147.)  The Attorney General therefore advised that "section 6254[, subdivision ](c) preserves the confidentiality of only a limited portion of the material found in a personnel file.  For this reason, it is appropriate to segregate the confidential matters from the remainder of such a file."  (53 Ops.Cal.Atty.Gen., *supra,* at pp. 147-148.)  The Attorney General did not advise disclosing the entirety of any personnel file, as inewsource implies.  Moreover, any analogy between the personnel files at issue in the Attorney General's opinion and the Rady documents is imperfect because the pilots were not employees of the Board of Pilot Commissioners.  (See *id.* at p. 144.)  Their personnel files therefore appear to have contained information that would not be comparable to the Rady documents.

As to the talent management summary, however, the absence of personally identifying information tips the balance in favor of disclosure. As we have explained, the privacy interest implicated by this record is significantly attenuated. Although it appears probable the participating employees were told that this record, too, would be kept confidential, the promise of confidentiality is not determinative in weighing the public and private interests. (See *BRV, supra*, 143 Cal.App.4th at pp. 748-749, 759; *Versaci, supra*, 127 Cal.App.4th at p. 821; *San Gabriel Tribune, supra*, 143 Cal.App.3d at p. 774.) The ratings contained in the talent management summary cannot be matched to any individual participant. The ratings do provide significant information, however, that bears on the competency of the District's participating senior managers across various categories (including "the organization's key competencies"). The public interest therefore remains strong. (See *LAUSD, supra*, 228 Cal.App.4th at p. 243; *BRV, supra*, 143 Cal.App.4th at p. 757.) Because disclosure of the talent management summary would not "constitute an unwarranted invasion of personal privacy," we conclude it is not exempt from disclosure under section 6254, subdivision (c).

IV

The District also contends the "catch-all" exemption in section 6255 of the PRA applies to the Rady documents. Under that exemption, an agency may withhold a public record from disclosure by showing "that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255, subd. (a).) "Records 'found to be nonexempt under section 6254 . . . can still be withheld under section 6255.' " (*LAUSD, supra*, 228

21

Cal.App.4th at p. 254.) However, because we have concluded that a portion of the Rady documents, the participant reports and the participant evaluation, are exempt under section 6254, subdivision (c), we need not consider whether they would additionally be exempt under section 6255. (See *ibid.*) Our analysis under the "catch-all" exemption will therefore be limited to the talent management summary.

"The catch-all exemption 'contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality.' [Citation.] Where the public interest in disclosure of the records is not outweighed by the public interest in nondisclosure, courts will direct the government to disclose the requested information. [Citation.] Conversely, when the public interest in nondisclosure clearly outweighs the public interest in disclosure, refusal to release records will be upheld." (*LAUSD, supra*, 228 Cal.App.4th at pp. 239-240.) "Under section 6255, the court balances the public interest in disclosure against the public interest in nondisclosure." (*LAUSD, supra*, 228 Cal.App.4th at p. 240.) We have already considered the public interest in the disclosure of the talent management summary in the previous part. We will therefore turn to the public interest in nondisclosure.

The District asserts that "releasing the Rady documents would be detrimental to the functioning of [the District] and its ability to carry out its duties to the public." Relying on *LAUSD*, the District claims disclosure would negatively affect management employees at the District by generating "unhealthy comparisons among" the employees, leading to "discord in the workplace." (See *LAUSD, supra*, 228 Cal.App.4th at pp. 250-

22

251.) In *LAUSD*, however, the government had already released information that was at least as detailed as the talent management summary, including anonymous ratings of each teacher. (*LAUSD, supra*, 228 Cal.App.4th at p. 247.) The concerns articulated in *LAUSD* related to the disclosure of the *identities* of the public employees at issue, which is not at issue in the talent management summary. (See *id.* at p. 245.)

The District's concerns may have some validity with respect to the participant reports and the participant evaluations, in which the participants and their corresponding ratings are identified. As to the talent management summary, however, we find the District's concerns to be largely unfounded because no individual participants are identified. While the talent management summary reflects how the 13 participants were rated in each category, the ratings cannot be linked to any individual participant. In the absence of any specific evidence to the contrary (and the District provides none), we believe any "unhealthy comparisons" or "discord in the workplace" generated by the disclosure of the talent management summary would be minimal. While some subordinate employees may notice the ratings of their superiors as a group, we believe the subordinates likely already understand their superiors' strengths and weaknesses in far more detail than the talent management summary provides. And, while some participants in the Program may experience embarrassment at the prospect of being included in a group with a given set of scores, the public interest in avoiding such embarrassment is also minimal.

"Courts must be alert to contentions by government entities that exaggerate the interest in nondisclosure, lest they be used as a pretext for keeping information secret for

23

improper reasons, such as to avoid embarrassment over mistakes, incompetence, or wrongdoing. After all, to some extent any request for disclosure of public records will place a burden on government. Both the voters and their elected officials have established the general policy that this burden is well worth bearing in order to keep democracy vital. If the catchall provision of the [PRA] becomes a loophole used to improperly keep public records from the people, the important purposes of the [PRA] would be undermined." (*LAUSD, supra*, 228 Cal.App.4th at p. 250.)

Balancing the strong public interest in disclosure of the talent management summary against the minimal public interest in its nondisclosure, we conclude the District has not shown the public interest in nondisclosure clearly outweighs the public interest in disclosure. (See § 6255, subd. (a).) " 'Since there is a strong public interest in disclosure, the balance must tip in favor of access' to the information." (*Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 472.) The "catch-all" exemption under section 6255 does not apply to the talent management summary.[11]

---

[11]    Our conclusion that the talent management summary must be disclosed under the PRA reinforces our determination that the participant reports and participant evaluation should not be disclosed. While the information contained in each is not exactly the same, the bulk of the information that would allow the public to assess the competency of the District's senior managers (at least according to the Program) is set forth in the talent management summary. (See *LAUSD, supra*, 228 Cal.App.4th at p. 242 ["Where a requester has an alternative, less intrusive, means of obtaining the information sought, the public interest in disclosure is minimal."].)

DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order denying inewsource's petition and to enter a new order granting inewsource's petition in part as to the talent management summary, which is reflected on the second page of the Rady documents as submitted to this court. Inewsource's request for attorney fees is denied without prejudice to inewsource's ability to seek attorney fees, including for this proceeding, in the superior court. In all other respects, inewsource's petition in this court is denied. Inewsource's request for judicial notice is granted in part and denied in part as set forth in this opinion. Inewsource is awarded its costs in this proceeding.

NARES, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.