Filed 9/10/15  P. v. Leyva CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B255012 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA403635) |
| v. | |
| RAMON LEYVA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Gail Ruderman Feuer, Judge.  Affirmed.

Lise M. Breakey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Supervising Deputy Attorney General, and William N. Frank, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Ramon Leyva (defendant) appeals the judgment of conviction for inflicting corporal injury, kidnapping, making criminal threats and violating a criminal protective order. Specifically, he argues that his convictions are infirm due to evidentiary errors and prosecutorial misconduct. We disagree, and affirm.

## FACTS & PROCEDURAL BACKGROUND

In October 2012, defendant and Maribel C. (Maribel) were unmarried but involved in a romantic relationship; they had two young children together. On the evening of October 14, 2012, defendant—incensed that Maribel had accused him of sleeping with her sister—chased Maribel from their apartment, pushed her to the ground, and repeatedly kicked and punched her in the head and face. Defendant then dragged her 150 feet back toward their apartment, telling her, "Wait until I get you inside, I'm a kill your ass. Just watch." These were not defendant's first acts of violence against Maribel. Just over a year before, defendant had choked and punched a then-pregnant Maribel, and the criminal protective order arising from that prior incident was still in effect in October 2012.

The People charged defendant with (1) corporal injury to the mother of defendant's children (Pen. Code, § 273.5), (2) kidnapping (Pen. Code, § 207, subd. (a)), (3) making criminal threats (Pen. Code, § 422, subd. (a)), and (4) disobeying a criminal protective order (Pen. Code, § 166, subd. (a)(4)).

A jury convicted defendant on all counts. The trial court sentenced defendant to eight years in state prison on the kidnapping count, three years on the criminal threats count to run concurrently, and imposed but stayed the remaining sentences for corporal injury to the mother of defendant's child (four years) and disobeying a criminal protection order (180 days) pursuant to Penal Code section 654.

Defendant appeals.

DISCUSSION

## I.     Evidentiary Errors

Defendant contends that the trial court erred in making three evidentiary rulings: (1) admitting three out-of-court statements made by two witnesses regarding what defendant might do in the future, for the limited purpose of showing those witnesses's states of mind; (2) admitting an out-of-court statement by a witness that she feared defendant was trying to attack her; and (3) admitting a 911 recording of one witness's statements that the witness later testified were not based on her personal knowledge.[1] We review evidentiary rulings for an abuse of discretion (*People v. Harris* (2005) 37 Cal.4th 316, 337), and our review is concerned with the propriety of the trial court's *ruling*, not its *reasoning* (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12 (*Chism*)).

### A.     *Statements regarding defendant's future intentions*

Defendant's October 14th attack on Maribel came to the attention of law enforcement because defendant's 13-year-old sister, Maritza, called 911. She called three times. During her first call, she reported that defendant was "hitting . . . his girlfriend . . . brutally." In her second call, Maritza asked police to hurry, and again reported that defendant was "hitting his girlfriend." During that call, she also stated that "My stupid brother is fucking going to kill my sister-in-law Maribel," and "This guy is gonna kill this woman."[2] After the second call, police arrived and transported Maribel to the hospital; defendant had fled. Police interviewed Maritza and her father, Juan Lopez (Lopez).

---

[1] During trial, defendant also objected to the admission of the 911 caller's out-of-court statements under the Confrontation Clause and, more specifically, *Crawford v. Washington* (2004) 541 U.S. 36. Defendant has not renewed that objection on appeal. It lacks merit in any event. (*Davis v. Washington* (2006) 547 U.S. 813, 828 [911 calls in response to an emergency are not "testimonial" under *Crawford*].)

[2] For the first time on appeal, defendant argues that an unidentified person (other than Maritza) made the latter statement. Defendant forfeited this argument by not objecting below. (Evid. Code, § 353.) This statement is in any event duplicative of the first statement on this call regarding defendant's intentions, and defendant's challenge to the first statement fails for the reasons discussed in the text.

Both told police that they saw defendant dragging Maribel; Lopez also said that he "feared one day [defendant] was going to kill [Maribel]" because he "used to beat her pretty good." Once the police left, defendant returned. Maritza called 911 a third time to report that she was "really worried" that defendant was "trying to open the door" and "trying to get in and attack us" and "beat" her.

At trial, Maritza testified that she never actually saw anything she was reporting on the 911 calls, and that she had "lied," "exaggerated" and made assumptions about what was happening during the calls because she was scared of the loud noises she was hearing. Maritza also testified that she was never scared of defendant. Lopez testified that he never spoke with police and, in fact, was somewhere else the whole time.

The trial court admitted all three 911 tapes as well as the officer's reports of what Maritza and Lopez told him. However, the court admitted Maritza and Lopez's statements that defendant was trying to kill Maribel for a limited purpose—namely, those statements were admitted only to show what Maritza and Lopez had been thinking, *not* to prove what defendant intended to do. The court similarly limited the admission of Maritza's statement, on the third 911 call, that defendant was intending to hurt her. The court gave limiting instructions to the jury that reflected its evidentiary rulings.

The trial court did not abuse its discretion in admitting this evidence. In light of their recantations at trial, Maritza's 911 calls and Lopez's statements to the police were properly admitted as prior inconsistent statements of witnesses who were subject to cross-examination. (Evid. Code, §§ 1235, 770; *Chism*, *supra*, 58 Cal.4th at pp. 1294-1295.)[3] Maritza's statements on the 911 tape were alternatively admissible as spontaneous declarations. (§ 1240; *People v. Lynch* (2010) 50 Cal.4th 693, 751-752.) Although the trial court could arguably have admitted these prior statements in their entirety, the court was sensitive to the special danger posed by Maritza and Lopez's specific statements regarding defendant's future intentions—namely, that such statements are necessarily

---

[3] Unless otherwise indicated, all further statutory references are to the Evidence Code.

4

speculative and especially prejudicial. The court consequently exercised its authority under section 352 to limit the purpose for which those particular statements were admitted. They were not admitted for their truth as hearsay (that is, not to prove that defendant actually intended to kill Maribel or harm Maritza); instead, they were admitted as nonhearsay evidence (that is, to prove that Maritza and Lopez made the statements and feared what defendant might do, which contradicted their trial testimony that defendant never harmed Maribel and that Maritza was not afraid of defendant).

Defendant contends that the admission of these statements is erroneous for two reasons. First, he argues Maritza and Lopez's statements regarding *his* future intentions are speculative and constitute impermissible character evidence under section 1101. However, these objections are relevant only if Maritza and Lopez's statements regarding defendant's intentions were admitted for their truth. They were not, and the authority defendant cites is accordingly irrelevant. (See *People v. Green* (1980) 27 Cal.3d 1, 23, fn. 9, overruled on other grounds by *People v. Martinez* (1999) 20 Cal.4th 225 [noting difference between admission of declarant's statement regarding a person's future intentions to show the person's state of mind rather than the declarant's]; *People v. Ortiz* (1995) 38 Cal.App.4th 377, 389 [same]; cf. § 1250 [addressing admission of statements of future intention for their truth]; *People v. Jablonski* (2006) 37 Cal.4th 774, 819 [applying § 1250]; *People v. Hernandez* (2003) 30 Cal.4th 835, 872 [same].)

Second, defendant alternatively asserts that, if admitted to show Maritza's and Lopez's states of mind, the statements are irrelevant. We disagree. As noted above, Maritza and Lopez's statements regarding defendant's homicidal or otherwise violent future intentions—whether or not true—are flatly inconsistent with their trial testimony that defendant was not harming anyone and that Maritza did not fear defendant. Such evidence "bearing on their credibility is always relevant" (*Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001, 1014), and at a minimum constitutes prior inconsistent statements under section 1235.

### B.    *Maritza's statements on the 911 tapes*

Defendant further argues that the trial court erred in admitting the 911 tapes because Maritza testified at trial that she was just relaying what other people told her and lacked personal knowledge.  Personal knowledge is a prerequisite to the admission of nonopinion testimony (§ 702), but it is one decided by the jury as long as the trial court first satisfies itself that "there is evidence sufficient to sustain a finding of" personal knowledge.  (§ 403, subd. (a)(2).)  Notwithstanding Maritza's trial testimony, the trial court found it possible for the jury to read Maritza's statements on the 911 tapes as "a contemporaneous description of what's happening while she's on the phone."  That finding is supported by Maritza's statements on the tapes regarding what was unfolding, her detailed descriptions of defendant's clothing and of Maribel's injuries, and her ability to describe how those injuries were being inflicted.

## II.    Prosecutorial Misconduct

Defendant next contends that the prosecutor engaged in misconduct during closing argument that violated his constitutional rights to due process.  Federal due process is violated when a prosecutor engages in misconduct that "infects the trial with such unfairness as to render the subsequent conviction a denial of due process."  (*People v. Maciel* (2013) 57 Cal.4th 482, 541.)  State due process is violated if the prosecutor employs "deceptive or reprehensible methods . . . to persuade the trier of fact."  (*Ibid.*)  Defendant alleges three instances of prosecutorial misconduct.

First, he argues that the prosecutor disregarded the trial court's instructions limiting the jury's consideration of Lopez and Maribel's statements regarding defendant's future intent.  However, the prosecutor mentioned Lopez's statement in the midst of arguing that Lopez was lying at trial when he denied making the statement.  As a result, the prosecutor's use of Lopez's statement was consistent with the trial court's ruling that it could be used only as a prior inconsistent statement.  The prosecutor also did not violate any limiting instruction with respect to *Maribel*'s view of defendant's future intentions because the trial court only issued limiting instructions as to such statements

by *Lopez* and *Maritza*. Defendant never sought a limiting instruction as to Maribel's statement from the trial court, and on appeal he does not argue why. Defendant has therefore forfeited the issue. It lacks merit anyway because Maribel's statement was inconsistent with her trial testimony, where she stated—in contradiction to her testimony at the preliminary hearing—that defendant never touched her and that she injured herself by walking into a wall.

Second, defendant asserts that the prosecutor engaged in misconduct when he argued to the jury that defendant's family "put [Maritza]"—"a 12-year-old kid"—"up to th[e witness] stand to lie." Defendant contends that this argument implied that the prosecutor had inside information, and posits that the prosecutor was trying to evoke an emotional response against defendant's family. It is certainly misconduct for a prosecutor to imply he has evidence of which the jury is unaware (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 560), but the prosecutor in this case did no such thing. Prosecutors are allowed to based their arguments on reasonable inferences drawn from the evidence (*People v. Valencia* (2008) 43 Cal.4th 268, 305), and it was reasonable for the prosecutor—or a jury—to infer from Maribel, Lopez, and Maritza's stark recantations from their prior statements that they were individually *and collectively* "circling the wagons" to protect defendant. Moreover, the trial court gave an admonition immediately after defendant's objection, reminding the jury to base its verdict solely on the evidence presented and not the argument of counsel; this cured any unfair prejudice that might have arisen.

Lastly, defendant argues that the prosecutor misstated the People's burden of proof when he told the jury, "Don't search for reasonable doubt, because everything is open to a possibility of doubt." Although this statement seems problematic by itself, we are required to evaluate it in the context in which it was made, not in isolation. (*People v. Centeno* (2014) 60 Cal.4th 659, 667.) In this case, the prosecutor's statement regarding reasonable doubt came at the end of a recitation of the evidence against defendant. In this context, the argument is reasonably understood as indicating the prosecutor's view

7

that the evidence established guilt beyond a reasonable doubt (thus rendering the jury's search for reasonable doubt fruitless and hence unnecessary), rather than as an entreaty to disregard the burden of proof. "We do not lightly infer that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements" (*ibid.*), and we have no reason to do so here. What is more, the trial court, in response to defendant's objection, immediately informed the jury that *the court's* reasonable doubt instruction was controlling, thereby dispelling any prejudice should the jury have chosen the more damaging meaning of the prosecutor's statement.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT

We concur:


_____, P.J.

BOREN


_____, J.

ASHMANN-GERST

8